LAWRENCE v. MORSE.

</div>

1. HOMESTEAD—TENANT IN COMMON.
   A tenant in common may have the benefit of a homestead in the lands held in common.

2. SAME—OCCUPANCY.
   Occupancy sufficient to support a claim of homestead as against an execution creditor is established by the claimant's moving household goods to the premises as soon as he becomes vested with the title, and by his sleeping there nights, and taking his breakfasts and his suppers there, although his wife and family were living on other premises owned by her at the time of the levy.

Appeal from Oakland; Smith, J. Submitted October 25, 1899. Decided December 12, 1899.

Bill by Francis P. Lawrence and Phoebe D. Lawrence against George C. Morse and John K. Judd to quiet title. From a decree for complainants, defendants appeal. Affirmed.

*A. & S. H. Perry*, for complainants.

*George W. Radford*, for defendants.

LONG, J. This bill was filed in the Oakland circuit court, in chancery, to set aside a levy and execution sale and to quiet the complainants' title to one village lot in the village of Oxford, which complainant Francis P. Lawrence claims as a homestead, and which it is conceded is of less value than $1,500. The cause was heard in open court, and a decree rendered below in favor of complainants. Defendants appeal.

It appears that one Minerva Green, an aunt of complainant Francis P. Lawrence, died on May 7, 1898, leaving a will, by which she devised to him and to his sister each an undivided half of the house and lot in question. His wife, Phoebe D. Lawrence, at that time owned a farm, upon which the complainants lived. She seems to have had the management of her own farm. Immediately after the death of Mrs. Green, Francis P. Lawrence moved a quantity of household goods into the house on the lot in Oxford, and stayed in the house nights, his wife continuing to occupy the home farm up to February following, when she, having rented the farm, went to live and make it her home with her husband, in the house in the village. It is the claim of the complainants that when they learned, the year before Mrs. Green's death, that she intended to give Francis P. the one-half interest in the house, they intended to move into it, and occupy it as a homestead. The testimony on the part of the complainants tended to show that there was an arrangement between the complainants, both before and after Mrs. Green's death, that the premises in controversy should be their homestead, and it is also claimed that Mr. Lawrence had

made an arrangement with his sister to purchase her interest in the property. This levy was made on May 17th, 10 days after Mrs. Green's death, and while the wife remained on the farm. The court below, in deciding the case, said:

"The only question involved is whether complainant Lawrence may have a homestead in the land sold upon execution, in which he was a tenant in common with his sister. Counsel for defendants relies upon the case of *Amphlett* v. *Hibbard*, 29 Mich. 298. But this case is fairly in conflict with and overruled by the later cases of *King* v. *Welborn*, 83 Mich. 195 (9 L. R. A. 803), *Sherrid* v. *Southwick*, 43 Mich. 515, and *Lozo* v. *Sutherland*, 38 Mich. 168. The only question about which I am in doubt is the one growing out of the facts. Mrs. Lawrence owns a farm, upon which her husband and family have resided with her. She testified, in substance, that her home was on this farm when the bill was filed; that, after Mrs. Green's death, her husband occupied this farm same as before Mrs. Green's death, except that he went to the village, and stayed overnight; that, the same day Mrs. Green died, Mr. Lawrence said, 'We will move to the village on this land, and make it a home.' Mr. Lawrence states, in substance, 'I took breakfast and supper in the house on this land, staying there overnight, but was not separated from my wife.' My belief from the evidence is that the necessity of providing a home for this family does not call for the exemption of this village property; that, were there no debts against him, he would not think of leaving the wife's farm; and that his prompt occupancy of the village property was upon advice, for the express purpose of avoiding its application towards payment of the debt by being in a position to claim it as a homestead. But, notwithstanding this, I think the homestead decisions are liberal and broad enough to give him the exemption."

It is undoubtedly well settled in this State that a tenant in common may have the benefit of a homestead in lands held in common. *King* v. *Welborn*, 83 Mich. 195 (9 L. R. A. 803), and cases there cited. This proposition is conceded by counsel for defendants; but he contends that no one can claim a homestead in property which is not occupied by him and his family, and that the mere fact

that Mr. Lawrence slept in the house nights, while his wife and family remained on the farm, was not sufficient occupancy to constitute this property a homestead.

We think the findings of fact by the court below are fully sustained by the evidence, and the court very properly reached the conclusion that the parties were entitled to the homestead right claimed. The case is unlike *Bowles* v. *Hoard*, 71 Mich. 155. In that case there was no actual occupancy when the levy was made. The conclusion there reached was that the subsequent occupancy was with the purpose of defeating the levy, the lien having accrued on the premises before there was an actual or potential occupancy. In the present case the complainant occupied the premises from the very day the title vested in him. There was no fraud in his doing this unless it be a fraud in any case to claim a homestead right as against an execution creditor. This is certainly not the policy of the law. If a debtor is justified in claiming a homestead as against his creditors, it must follow that he is justified in establishing such right by occupancy.

The decree must be affirmed, with costs.

The other Justices concurred.