## BAKER v. GRAYSON et al.

No. 10500—Opinion Filed May 16, 1922.

(Syllabus.)

1. **Homestead—Alienation by Wife Alone—Validity.**

No alienation of the homestead by the wife alone, in whatever way it may be effected, is of any validity; nothing that she can do or suffer to be done can cast a cloud upon the title. It remains absolutely free from all grants and incumbrances, except those mentioned in the Constitution.

2. **Same—Alienation by Husband and Wife Jointly—Necessity.**

Under the provisions of the Constitution and laws of Oklahoma, the homestead, exempt by law, cannot be alienated except by a written instrument joined in and subscribed by both husband and wife, where that relation exists.

3. **Homestead—Exemption—Right of Tenant in Common.**

The established rule in many jurisdictions that a tenant in common is entitled to a homestead exemption in land held in common should, under our policy of liberally construing the exemption law so as to afford protection to a debtor and his family in the possession of a home, obtain in this state.

Error from District Court, Wagoner County; R. P. DeGraffenried, Judge.

Action by Angeline Grayson and another against Earl Baker and others for a decree of ownership of land. Judgment for plaintiffs and other defendants, and defendant Baker brings error. Affirmed.

A. A. Davidson, for plaintiff in error.

Ledbetter, Stuart, Bell & Ledbetter, for defendants in error.

PITCHFORD, V. C. J. Angeline Grayson and Julia Hawkins, as plaintiffs, filed their petition in the district court of Wagoner county, Okla., against Earl Baker et al. for a decree declaring them to be the owners of a one-half interest in the north half of the southwest quarter, and the southwest quarter of the southwest quarter, of section 16, township 17 north, range 16 east, alleging the same to have been allotted to William McIntosh, a Creek freedman, during his lifetime; that McIntosh died in 1906 without issue, and without having been married, and left as his sole heirs his mother, Louisa Jones; Angeline Grayson, his aunt, a half-sister of his father; and Julia Hawkins, his cousin, the daughter of one Babe Hawkins, a half-brother of the allottee's father; and that plaintiffs were therefore the owners of a one-half interest of said lands. Earl Bak-

er, plaintiff in error, by his answer claimed the whole estate and asserted that Louisa Jones was the mother and sole heir of the allottee. He claimed title by virtue of the following deeds: A deed of October 3, 1907, from Louisa Jones to C. W. Lumpkin; a deed of March 31, 1908, from C. W. Lumpkin to Adeline Orcutt; a deed of September 15, 1908, from Adeline Orcutt to Maggie Baker; and a deed of June 26, 1913, from Maggie Baker to defendant Earl Baker. The plaintiff in error also asked for possession of the land, and that his title be quieted.

Deichman and Prentice, on motion of plaintiffs, were made additional parties defendant. Answering the cross-petition of Baker, Deichman and Prentice claimed title to the entire premises under an execution sale on a judgment obtained by them in the district court of Tulsa county, on the 22d of January, 1911, against Maggie and J. N. Baker. The judgment of the trial court was that the plaintiffs were the owners of a one-half interest in the land, and that Deichman and Prentice owned the remaining one-half interest under a sheriff's deed made pursuant to the sale of the land by virtue of an execution under the foregoing judgment. Earl Baker filed his motion for new trial, and same having been overruled, he appeals. No appeal is prosecuted from that part of the judgment awarding one-half interest in the land to Angelina Grayson and Julia Hawkins. The controversy on appeal is between Earl Baker, and Deichman and Prentice, and involves only the undivided one-half interest in the land inherited by Louisa Jones. J. N. Baker and Maggie Baker had for several years after December 15, 1908, occupied, and were so occupying at the date of the judgment, the premises as a homestead. After the execution of the deed by Maggie Baker, she and her husband, J. N. Baker, moved away from the premises, and at no time thereafter occupied the same.

Notwithstanding the numerous errors assigned for reversal of the judgment of the trial court, there is really but one question involved in this appeal, and that is, "Whether Deichman and Prentice, by virtue of their purchase at sheriff's sale, have rights in the land superior to those of Earl Baker?" It was the theory of the trial court that the land was the homestead of Maggie and J. N. Baker at the date of the deed to Earl Baker, and that said deed was invalid, because same was not joined in by J. N. Baker, the husband, and that this deed was ineffectual as a conveyance, and that by reason of the abandonment of the homestead by Maggie and J. N. Baker the land became subject to

the execution of the Deichman and Prentice judgment. It is the contention of plaintiff in error that, while the deed executed by Maggie Baker to Earl Baker was ineffectual as a muniment of title, yet the protection to a homestead afforded by the constitutional and statutory provisions lasts no longer than the occupancy of the premises, and that such deed may become effectual after the homestead right ceases. To sustain this contention, numerous authorities are cited, and from an examination of the same we are of the opinion that the contention appears to be sustained in the jurisdictions from which the citations are taken. Whatever may be the rule in other states, it is well established in this state that a deed to the homestead executed by either husband or wife during the occupancy of the homestead by both husband and wife is absolutely void for all purposes.

Article 12, section 2, of the Constitution of Oklahoma, provides:

"The homestead of the family shall be, and is hereby protected from forced sale, for the payment of debts, except for the purchase money therefor or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon; nor shall the owner, if married, sell the homestead without the consent of his or her spouse, given in such manner as may be prescribed by law: Provided, nothing in this article shall prohibit any person from mortgaging his homestead, the spouse, if any, joining therein; nor prevent the sale thereof on foreclosure to satisfy any such mortgage."

Section 1143, Rev. Laws of 1910, contains the provision:

"* * * And no deed, mortgage or contract relating to the homestead exempt by law, except a lease for a period not exceeding one year, shall be valid, unless in writing, and subscribed by both husband and wife."

In Whelan v. Adams et al., 44 Okla. 696, 145 Pac. 1158, the third and fourth paragraphs of the syllabus read as follows:

"(3)   An attempted conveyance by deed of the homestead of the family, by a married man, given without the wife's consent in the manner prescribed by law, is void.

"(4)   Where the relation of husband and wife exists, the deed of the former to the homestead of the family conveys no title, and this notwithstanding the fact that the husband and wife be living separate and apart, or even though the wife may have without justifiable cause abandoned the husband."

We quote from the body of the opinion as follows:

"No alienation of the homestead by the husband alone, in whatever way it may be effected, is of any validity; nothing that he can do or suffer to be done can cast a cloud upon the title; it remains absolutely free from all grants and incumbrances, except those mentioned in the Constitution." Morris v. Ward, 5 Kan. 239.

In Carter Oil Co. v. Popp, 70 Oklahoma, 174 Pac. 747, in the body of the opinion, it is stated:

"Homestead rights cannot be conveyed or encumbered except by the joint consent of husband and wife.   The interests are not severable, and both parties are necessary to a conveyance.   One party cannot convey his or her rights without the consent of the other, and the rights of both must be conveyed together." To the same effect, see Treese v. Shoemaker, 80 Okla. 235, 195 Pac. 766; Davis v. McGilbray, 81 Okla. 42, 196 Pac. 339.

In Hawkins v. Corbit, 83 Okla. 275, 201 Pac. 649, this court, in the third and fourth paragraphs of the syllabus, said:

"(3)   Under the above provisions of the Constitution and laws of Oklahoma, the homestead exempt by law cannot be alienated except by a written instrument joined in and subscribed by both husband and wife, where that relation exists.   In this case the husband executed a deed at Muskogee on February 2d.   The wife was not present at the time he executed the deed.   On February 5th, at Tulsa, the wife signed a separate deed, an entirely different writing, in the absence of her husband.   Held, this was not a sufficient compliance with the statute to convey title to the homestead.

"(4)   It is not within the equitable power of courts in this state to declare any indebtedness a lien on a homestead.   The Constitution and statutes of this state have prescribed the manner in which it may be created, and they must be strictly followed."

In the still more recent case of Thomas v. James, 84 Okla. 91, 202 Pac. 499, the rule is stated as follows:

"By the provision of this section of the statute, 'no deed * * * to the homestead * * * shall be valid unless in writing and subscribed by both husband and wife, where both are living and not divorced or legally separated,' this language is clear and unambiguous, and can only be construed as meaning that the homestead can be conveyed only by the husband and wife executing a joint deed.   Under the provisions of the statute, the deed executed by Martha James on September 24, 1913, was invalid, because not subscribed by the husband, and likewise the deed from Jacob James, executed on October 8, 1913, was invalid because not subscribed by the wife; and, each of these deeds being invalid, both of them will not operate as a

valid conveyance. As was said in Howell v. McCrie, 36 Kan. 636, 14 Pac. 257, 59 Am. Rep. 584, wherein the court was considering the effect of separate mortgages on the homestead, one executed by the husband and the other by the wife: 'How, then, can it be said that two void instruments, one executed by the husband and the other by the wife, mortgaging the homestead, can have the effect of creating a lien? They are void for all purposes, whether considered separately or taken together.' "

As above stated, the judgment of Deichman and Prentice against the Bakers was secured while the premises in controversy were occupied as a homestead by the Bakers. The judgment was kept alive, and when the homestead was abandoned and another established, then the interest of Maggie Baker in the land became subject to the claim of Deichman and Prentice, and when this interest was sold under the execution, and Deichman and Prentice became the purchasers, and the sale being approved by the proper court, and a deed duly issued, the rights so acquired by Deichman and Prentice became superior to any rights claimed by Earl Baker by virtue of his deed from Maggie Baker, for the reason that the deed not being joined in by J. N. Baker, the husband, the same was a nullity and conveyed no rights to the grantee. The land, notwithstanding the deed, remained the property of Maggie Baker and was subject to sale on execution the same as though the deed had never been executed.

Plaintiff raises another question, and this is, "Whether Maggie Baker and J. N. Baker could in any case have a homestead in an undivided interest in the land?" We fail to understand how plaintiff in error could obtain any advantage, even should it be held that no homestead character attached to the land involved. If the homestead character had not attached, then under section 1174, Rev. Laws 1910, as construed in Ward v. Wiggins, 73 Oklahoma, 174 Pac. 231, the attempted gift of Maggie Baker to Earl Baker was without any valuable consideration; such attempted gift was void against Deichman and Prentice, who held the judgment at that time against Maggie Baker. The deed from Maggie Baker to Earl Baker was not executed until June 26, 1913. Earl Baker testified that the land was given to him. However, it is not necessary to discuss this question. It has been expressly held in this state that a tenant in common may have his homestead and is entitled to a homestead exemption in lands held in common. In Atlas Supply Co. v. Blake, 51 Okla. 778,

152 Pac. 601, in the body of the opinion, the court said:

"The established rule in many jurisdictions that a tenant in common may have a homestead, and is entitled to a homestead exemption, in land held in common (21 Cyc. 505, and cases cited) should, under our policy of liberally construing the exemption law so as to afford protection to a debtor and his family in the possession of a home, obtain in this state. Accordingly, in the instant case the premises levied on constituted the homestead of the defendant at the time of the creation of the debt sued on, and ever since." To the same effect, see Alexander v. Bobier, 65 Okla. 301, 166 Pac. 716.

We conclude that the judgment of the trial court should be affirmed, and it is so ordered.

JOHNSON, McNEILL, MILLER, KENNAMER, and NICHOLSON, JJ., concur.