## WENDLER v. BRENNEMAN et al.

## LARSON v. SAME.

Third Division. Anchorage. February 28, 1923.

Nos. 237–A, 238–A.

**1. Homestead ⊜⪼84—Tenancy in Common—Husband and Wife.**

Wendler and Larson purchased a lot in Anchorage, with individual funds, from the government, and erected a two-story building thereon. The upper story was constructed for dwelling purposes and Wendler and his family resided in one portion, while Larson and his family occupied the remainder of that story. Judgment was obtained against Wendler and Larson as copartners, the property was taken under execution, and the defendant Brenneman, as marshal, gave notice of the sale of the premises at marshal's sale to pay the judgment against the copartnership. Florence Wendler, the wife of one of the partners, and Larson, the other partner, filed notice of a homestead claim to the property, and brought this suit to establish the same, and to prevent the sale of the property free from such homestead claim. The partners were also adjudicated bankrupts, and notice of that proceeding was also given. *Held,* tenants in common may claim homesteads in the same property.

**2. Homestead ⊜⪼35.**

The homestead character of property is not destroyed by its use for business purposes, while at the same time being occupied mainly as a residence.

**3. Homestead ⊜⪼200—Estoppel—Exemptions.**

Where execution is levied on property occupied by the debtor as his home, and he sets up his right of homestead, without the creditor shall direct the marshal to proceed to appraise the property under section 1104, Compiled Laws of Alaska 1913, *held,* the creditor is estopped, where no proof is offered on the trial that

⊜⪼See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the value is in excess of the exemption, to raise that issue in his further pleadings.

These are separate suits in equity by Florence Wendler and Ray T. Larson against the above-named defendants, which have been tried and submitted upon the same record and evidence, under a stipulation of counsel that the issues involved in each case are identical, and that the evidence is the same in both suits, and that said actions may be heard at one and the same time.

The plaintiffs seek an injunction against the defendants, enjoining the judicial sale of their undivided one-half interest each in a town lot known as lot 1, block 38, town site of Anchorage, Alaska, under an execution secured by defendant Seattle Merchants' Association upon a judgment rendered against them as copartners, and also against A. J. Wendler, husband of Florence Wendler, on the 9th day of October, 1920, in this court. On the 28th day of October, 1920, an execution was issued under said judgment, and all the property of the defendants, with the exception of said lot and buildings, seized under said execution, and the proceeds applied to the satisfaction of said judgment, leaving the sum of $14,276.66 unsatisfied.

Thereafter, on the 23d day of July, 1921, an alias execution was executed to subject the interests of the defendants in the said lot and buildings to the further satisfaction of said judgment, and pursuant thereto, on the 21st day of August, 1921, the defendant Brenneman, United States marshal, published a notice of sale of said lot 1, block 38, of the town site of Anchorage, in further satisfaction of said judgment, and on the 9th day of November, 1920, each of the plaintiffs herein, by due and proper notice in writing, notified the defendants and their attorneys of their claim of homestead exemption with reference to the said town lot and buildings and their interest therein, and also, on the 25th day of August, 1921, served upon the defendants and their attorneys a second notice, entitled "Notice as to Homestead and Bankruptcy Proceedings," in which said notice it is stated that on the 18th day of January, 1921, this court made and entered an adjudication of bankruptcy, wherein each of the plaintiffs was declared a bankrupt, and also A. J. Wendler, and claiming that the said lot 1, block 38, of the town site of Anchorage, together with the buildings, improvements, and appurtenances, are claimed by each of the

plaintiffs as a homestead, pursuant to the decalaration of homestead made on the 9th day of November, 1920, and further, that said claim is made in compliance with and according to section 1104 of the Compiled Laws of Alaska.

The said lot, buildings, and appurtenances were purchased by plaintiffs in the year 1915, with individual funds and not from partnership funds, from the United States land agent at Anchorage for a total purchase price of $555 on a time basis, and immediately went into possession of said property and erected buildings thereon. Said lot is situated on Fourth street, and is 50 feet by 130 feet in size. The main building thereon is a two-story frame building 25 feet by 52 feet. Other structures consist of a leanto on the main building, a garage, woodshed, small cabin, and chicken house.

The main building was constructed in the fall of 1915, and at that time the upper story was divided into two separate and complete living apartments, each apartment consisting of pantry, dining room and kitchen combined, and bedroom; the plaintiff Ray T. Larson, with his wife and three girls, occupying as a residence the apartment on the west half of the second story, and the plaintiff Florence Wendler, with her husband and two girls, occupying as a residence the apartment on the east half of the second story. They continued to occupy said apartments as a home and residence from that time until the commencement of this action.

The amended complaint, which is identical in each case, sets forth the ownership of the said property by plaintiffs and the occupation thereof as a residence continuously until the time of the commencement of the action, and that the United States marshal threatens to sell the same under a judgment obtained by the defendant Seattle Merchants' Association, and that a proper claim of homestead and notice to the defendants was given by plaintiffs of the said property, and that notwithstanding the same the defendants will sell the said property unless restrained by an order of the court, and prays for a permanent injunction against the defendants prohibiting such sale.

The defendants make a joint answer denying the right of plaintiffs to a homestead exemption upon said property, and in the first affirmative answer set up all the proceedings in the action of the Seattle Merchants' Association against the plain-

tiffs as copartners and A. J. Wendler, and plead an estoppel against the plaintiffs, alleging that the debts upon which the action of the Seattle Merchants' Association was brought were contracted by the plaintiffs upon representations by them that said lot No. 1, in block 38, of Anchorage town site, was an asset of the partnership, and that it was in reliance upon such representations that the credit by which the debts were incurred was extended by the assignors of the Seattle Merchants' Association.

In a further affirmative answer it is alleged that the plaintiffs are not entitled to a homestead exemption, for the reason that the plaintiffs did not, at the time of the levy of the writ of attachment on said property on September 9, 1920, nor within a reasonable time thereafter, give notice to the defendant Brenneman, United States marshal, of the plaintiffs' claim of homestead as provided by section 1104 of the Compiled Laws of Alaska, and further that no notice was given to the defendants, or either of them, prior to the 25th day of August, 1921.

It is further alleged in the first affirmative answer that the property upon which homestead exemption is sought is of the value of $8,000. This is denied by each of the plaintiffs in the reply, and no testimony or evidence was offered to the court on that subject.

William H. Rager and Leopold David, both of Anchorage, and L. V. Ray, of Seward, for plaintiffs.

Donohoe & Dimond, of Valdez, and Arthur Frame, of Anchorage, for defendants.

CLEGG, District Judge.  Section 1104 of the Compiled Laws of Alaska is as follows:

"The homestead of any family, or the proceeds thereof, shall be exempt from judicial sale for the satisfaction of any liability hereafter contracted or for the satisfaction of any judgment hereafter obtained on such debt.  Such homestead must be the actual abode of and owned by such family or some members thereof.  It shall not exceed two thousand five hundred dollars in value, nor exceed one.hundred and sixty acres in extent if not located in a town or city laid off into blocks or lots, or if located in any such town or city, then it shall not exceed one-fourth of one acre.  This act shall not apply to decrees for the foreclosure of any mortgage properly executed; but if the owners of such homestead be married, then it shall be executed by husband and wife.  When any officer shall levy upon such homestead, the owner thereof, or the wife, husband, agent, or attorney of such owner,

may notify such officer that he claims such premises as his homestead, describing the same by metes and bounds, lot or block, or legal subdivision of the United States, whereupon such officer shall notify the creditor of such claim, and if such homestead shall exceed the maximum in this section, and he deem it of greater value than two thousand five hundred dollars, then he may direct the marshal to select three disinterested persons, who shall examine and appraise ·such homestead, under oath, commencing with the twenty acres of lot upon which the dwelling is located, appraising each lot or twenty acres separately; and if the same exceed two thousand five hundred dollars, then the marshal shall proceed to sell all in excess of two thousand five hundred dollars by lots or smallest legal subdivisions, offering them in the order directed by the judgment debtor, if he chooses to direct; otherwise, he shall sell the same as aforesaid so as to leave the homestead as compact as possible. The homestead aforesaid shall be exempt from sale or any legal process after the death of the person entitled thereto for the collection of any debts for which the same could not have been sold during his lifetime."

1. The main contention of the defendants is that the plaintiffs are joint tenants, in the possession and occupancy of the lot and buildings in controversy, and as such are not entitled to the right of homestead exemption therein.

No claim is made that the failure of the plaintiffs to receive a patent from the United States prior to the commencement of the action to the property in controversy debars them from claiming a homestead exemption therein; it being conceded that the right to a homestead does not depend upon a fee simple title, but upon possession, use, and occupancy as a home.

While not unmindful of the decisions of courts which announce the view that a tenant in common is not entitled to a homestead exemption in land held in common, I take the view, in the absence of any authoritative decision of the Supreme Court of Oregon upon that subject, that the reasons for the enforcement of that rule do not exist in this case, and that, therefore, I am not compelled to follow that rule. The plaintiffs are the sole owners of the property in question, and they join in demanding the same relief. There can be no question, therefore, as to the inconvenience of the enforcement of the rule in this case or as to the difficulty of partition, and the reason for the rule ceasing to exist the rule itself should not be followed. The decisions which hold to the contrary appear to be of equal number and weight.

In the case of Baker v. Grayson et al., 86 Okl. 159, 207 P. 301, the Supreme Court of Oklahoma says:

7 A.R.—2

"It has been expressly held in this state that a tenant in common may have his homestead and is entitled to a homestead exemption in lands held in common."

In Atlas Supply Co. v. Blake, 51 Okl. 778, 152 P. 601, in the body of the opinion the court said:

"The established rule in many jurisdictions, that a tenant in common may have a homestead, and is entitled to a homestead exemption, in land held in common (21 Cyc. 505, and cases cited), should, under our policy of liberally construing the exemption law, so as to afford protection to a debtor and his family in the possession of a home, obtain in this state. Accordingly in the instant case the premises levied on constituted the homestead of the defendant at the time of the creation of the debt sued on, and ever since."

To the same effect are the decisions in the following cases: Clark v. Thias, 173 Mo. 628, 73 S. W. 616; Thompson on Homesteads and Exemptions, § 181; Gorman v. Hale, 109 Mo. App. 176, 82 S. W. 1110; Lawrence v. Morse et al., 122 Mich. 269, 80 N. W. 1087; Carroll et al. v. Jeffries et al., 39 Tex. Civ. App. 126, 87 S. W. 1050; Livasy et al. v. State Bank of Redfield, 185 Iowa, 442, 170 N. W. 756; Sieg v. Greene (C. C. A.) 225 F. 955, Ann. Cas. 1917C, 1006.

The fact that the wife, and not the husband, is the plaintiff, does not change the situation, or affect her right to claim the homestead exemption. In the case of Mennell v. Wells, 51 Mont. 141, 149 P. 954, the court says:

"By a general consensus of opinion, the courts hold that such laws have for their purpose the maintenance and protection of the family and that they are subject to the rule of liberal construction, to the end that this purpose may be fully effected, and though the particular statute under consideration, as is the case here, makes the exemptions in favor of the judgment debtor eo nomine, the courts do not regard them as conferring a personal right upon the debtor, but rather as declaring a family right which may be asserted effectively by the wife or any other person upon whom, for the time, the care of the family has been cast."

See, also, Bowman v. Sherrill et ux., 59 Or. 603, 117 P. 1122.

In the case of Mansfield v. Hill, 56 Or. 400, 107 P. 471, 108 P. 1007, the Supreme Court of Oregon, with reference to the homestead law of that state, says:

"The word 'homestead' is not the designation of a particular estate, but signifies the place where the family dwells, and the whole purpose of this act is to create an exemption from execution sales."

2. It is further contended by the defendants that the right of the plaintiffs to a homestead is denied by the fact that the lower part of the main building was used by them as a store premises in which was conducted a grocery business.

But, as will be seen from the statement of facts, the plaintiff Larson has three children, and the plaintiff Wendler has two, and it may well be assumed that the family of either of the plaintiffs would find in the entire building only sufficient room for one family, but, owing to the apparent necessity to curtail expenses, a portion of the building was devoted to mercantile purposes.

That the homestead character of property is not destroyed by its use for business purposes while at the same time being occupied mainly as a residence, has been frequently decided by the courts. Hogan v. Manners, 33 Am. Rep. 199; Bebb v. Crowe, 39 Kan. 342, 18 P. 223; De Ford v. Painter, 3 Okl. 80, 41 P. 96, 30 L. R. A. 722; In re Matson's Estate, 178 Iowa, 310, 159 N. W. 1007; Foltz v. Maxwell, 100 Neb. 713, 161 N. W. 254; Kiesel v. Clemens, 6 Idaho, 444, 56 P. 84, 96 Am. St. Rep. 278.

It is conclusively shown by the evidence that neither of the plaintiffs have any other property, real or personal, except as contained in the lot and buildings in controversy and it would require an illiberal construction of our homestead laws which would deprive both families of their right to a place to live. "Both the elements of homestead were present, namely, actual abode of a family and ownership by a member of that family"—citing Paulson v. Hurlburt, 93 Or. 419, 183 P. 941.

3. The defendants further contend that plaintiffs are estopped from claiming a homestead exemption by reason of the fact that at the time the debts were contracted the plaintiffs included the property in question in credit statements furnished to their creditors, to whose rights the defendant in this case Seattle Merchants' Association has succeeded by assignment.

It appears from the testimony that in the first two years in which the grocery business was conducted by the plaintiffs they paid cash for their orders, and that during that time the plaintiff Ray T. Larson signed a credit statement to one of the creditors of the firm of Larson & Wendler in which the property in question was listed as an asset, and that A. J. Wendler, who was the manager of the firm of Larson & Wendler, if not a

partner, also signed statements of the same purport, and it is contended that the creditors relied upon these representations and were induced thereby to allow the plaintiffs Larson and Wendler a greater credit than they otherwise would.

In the first place, let it be said that the evidence fails completely to show that the lot and buildings in question were ever a part of the assets of the partnership of Larson & Wendler. All the testimony on that subject is to the effect that the interest of Ray T. Larson and the interest of Florence Wendler in the buildings and lot in controversy was held by them as individuals and not as copartners, and there is no testimony to the·contrary, with the exception of the deductions that may be made from the fact that the property was included in the credit statements above referred to by Ray T. Larson and A. J. Wendler. The statements, however, do not, in terms or in fact, say that the lot and buildings were assets of the partnership, and it is easy to comprehend how that property might be listed in such a credit statement of the firm, by either a member thereof or the manager thereof, upon the theory that it was an asset of the individual members of the firm, which would be subject to judgment and execution after all the partnership assets had been realized upon in case of a deficiency. But the testimony further shows that the assignors of the defendant Seattle Merchants' Association could not have been misled by the inclusion of these items in any credit statements, because it appears by the testimony that their agent, Chisholm, a witness for the defendants, either had knowledge of the fact of the occupancy of the lot and buildings by the families of the two plaintiffs during all the time that the debts were being incurred, or had the opportunity for such knowledge, and therefore knowledge on his part will be presumed; so also is his knowledge in that regard the knowledge of his principals. And, further, it must be assumed that any credit that was extended to the firm had embodied in the contract or contracts the law of the territory, which permitted a homestead exemption to the heads of families of property which is their actual abode.

The right of homestead exemption is a personal right and can be exercised at any time after levy and before sale, citing Security National Bank v. Mason, 117 Wash. 95, 200 P. 1097, Watson et al. v. Hurlburt, 87 Or. 297, 170 P. 541, and Wilson et al. v. Peterson et al., 68 Or. 525, 136 P. 1187; and before it

could be said that the plaintiffs, or either of them, waived their legal right in this respect, there must be both knowledge of the right and the intention to relinquish it. Portland & F. R. Co. v. Spillman, 23 Or. 587, 32 P. 688; Parker v. Hood River, 81 Or 707, 160 P. 1158; In re Iltz Estate, 104 Or. 59, 202 P. 413, 206 P. 550. And that one claiming a homestead exemption cannot be estopped by virtue of statements made to creditors has been previously held in many adjudicated cases. In Meyer Bros. Drug Co. v. Bybee, 179 Mo. 354, 78 S. W. 579, 584, the court, after fully discussing this question; says:

"We have reached the conclusion that the statement made by respondent as to his financial condition does not operate as an estoppel or waiver of his right to claim his homestead exempt from the levy of the execution issued in this proceeding. This conclusion is supported by practically all the courts that have had occasion to give expression to their views upon the principle involved in this contention."

4. Another contention of the defendants is that the debts upon which judgment was obtained against the plaintiffs as copartners were partnership debts, and that the property in controversy upon which homestead exemption is claimed was partnership property.

There being no evidence to support the contention that this was partnership property, and all the evidence being to the contrary, this claim is not tenable.

In this connection it may be said that it appears by the evidence that, at the time this lot 1 in block 38 was purchased by the plaintiffs, they also purchased another lot at the same time in the same way, and it appears from the evidence that the plaintiff Ray T. Larson individually sold his interest in said second lot, and it is inferable from the evidence that at the time of the levy of the first execution, when all other property of the plaintiffs was levied upon with the exception of lot 1, block 38, the plaintiff Florence Wendler had also disposed of her interest in the second lot, all of which tends to support the contention of the plaintiffs that the interest of each of the plaintiffs in the property in controversy was an individual interest, and not a partnership interest.

This contention, too, on the part of the defendants, may be said to conflict materially with their claim, previously considered, that the plaintiffs are cotenants, because there is a marked

distinction between the interest of a cotenant and the interest of a copartner.

5. There is no merit in the further contention of the defendants that notice of the claim of homestead by plaintiffs was not given to the United States marshal and to the defendant Seattle Merchants' Association, as provided by section 1104 of the Compiled Laws of Alaska. See Wilson v. Peterson and Bank v. Mason, supra.

6. It is alleged in the second affirmative answer of the defendants that the lot and buildings are of the value of $8,000, and this allegation is denied in the separate replies of the plaintiffs.

As to the value of the property, no evidence was introduced upon either side. In this state of the pleadings, the court must, and does, find that this allegation is abandoned by the defendants, and that the value of the property in controversy, as to the interest of each plaintiff, is less than $2,500.

This conclusion is .inevitable from the state of the proof on that subject, and also from the failure of the defendants to invoke the provisions of section 1104 of the Compiled Laws of Alaska, which states:

"* * * And if such homestead shall exceed the maximum in this section and he (the creditor) deem it of greater value than two thousand five hundred dollars, then he may direct the marshal to select three disinterested persons who shall examine and appraise such homestead under oath," etc.

There is no testimony to show that the defendant Seattle Merchants' Association, at the time of the publication of the notice of sale of the premises by the marshal under the execution and judgment, or at the time of the serving of the declaration and notice of homestead by the plaintiffs upon the defendants, or at any time prior to the filing of the amended answer of defendants, claimed that the homestead as claimed by either of the plaintiffs exceeded .in value the sum of $2,500, and that they deemed it of greater value than $2,500.

It would therefore seem, and the court so holds, that the defendants are estopped to claim for the first time in their pleadings, where no proof is offered on the trial, that the value of the homestead property as claimed by either of the plaintiffs is in excess of $2,500.

On the pleadings and evidence I find the issues in favor of the separate plaintiffs, and the plaintiffs may have judgment

that each is entitled to a homestead exemption in lot 1, block 38, and buildings and appurtenances thereof, of the town site of Anchorage, Alaska, with the right to occupy the same as such, but that when such occupancy shall cease the lien of the defendants secured by their judgment shall attach thereto, and that defendants herein shall be enjoined from making judicial sale of the said property so long as it is occupied as a homestead by the plaintiffs. Bowman v. Sherrill, supra.

On account of the distance of the parties from the court, findings and conclusions in the case may be submitted by the plaintiffs within 20 days from this date, and proposed findings by the defendants within 30 days from this date.