**Edwin DALTON and Patricia Dalton, Appellants,**

**v.**

**INTERIOR CREDIT BUREAU, INC., Appellee.**

**No. 4265.**

Supreme Court of Alaska.

Sept. 5, 1980.

Paul J. Canarsky, Craig J. Tillery, Alaska Legal Services Corp., Fairbanks, for appellants.

Peter J. Aschenbrenner, Aschenbrenner & Savell, Fairbanks, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER,* BURKE and MATTHEWS, JJ.

## OPINION

MATTHEWS, Justice.

This appeal requires construction of the following portion of AS 09.35.090(a):

> *Residence exemption.* (a) The homestead of any family is, or the proceeds of the homestead are exempt from judicial sale for the satisfaction of any liability contracted or judgment on debt except as provided in this section. The homestead consists of the actual abode of and owned by the family or some member of the family. It shall not exceed $19,000 in value, in excess of mortgages, deeds of trust and liens of record, and *not 160 acres in extent if located outside a town or city laid off into blocks or lots, or not exceed one–fourth of one acre if located in a town or city.* (Emphasis added).

Interior Credit Bureau, Inc. obtained a default judgment against Edwin and Patricia Dalton ("the Daltons") and levied upon four lots owned by the Daltons in the North Fairbanks Heights Subdivision. At the district court level, the Daltons successfully asserted the homestead exemption for all four parcels, which cover a total of approximately 2.2 acres and lie outside the corporate limits of the Municipality of Fairbanks. The superior court reversed, stating:

> Because the statutory term "town" can be given only a speculative construction, the character of the land in question, rather than its relative location, is the more useful aid in determining this legal question of whether the 160 acre, or the one–quarter acre, exemption should apply.

> \* \* \* \* \* \*

> Because appellee's property is subdivided, and into parcels closely approximating the one–quarter acre limitation of the statute for urban homesteads, this Court concludes that the Daltons are not entitled to the benefit of the 160–acre exemption for a rural homestead.

On appeal, the Daltons challenge this conclusion.

▪ The terms "city," "town," and "village," when appearing in the context of homestead exemption statutes, have generally been held to refer to the urban or rural character of the land in question, and not to whether that land is technically situated inside or outside incorporated municipal boundaries. *Buttram v. Harris,* 73 F.2d 679 (5th Cir. 1934); *King v. Sweatt,* 115 F.Supp. 215 (W.D.Ark.1953); *Wilder v. McConnell,* 91 Tex. 600, 45 S.W. 145 (1898); *Woolf v. Smith,* 86 S.W.2d 67 (Tex.Civ.App.1935). "Property may be within the corporate limits of a town or city and constitute a rural homestead, or it may be without the corporate limits of the city and constitute an urban homestead." *Boerner v. Cicero Smith Lumber Co.,* 293 S.W. 632, 636 (Tex. Civ.App.1927); *accord, Jones v. First National Bank,* 259 S.W. 157, 159 (Tex.Com. App.1924). "[W]hether [a] claimant is entitled to a rural or an urban homestead [exemption] is to be determined upon the facts of [each] case," *Buttram v. Harris,* 73 F.2d at 680; *accord, King v. Sweatt,* 115 F.Supp. at 220. The existence or absence of a map, plat, or subdivision is a material consideration, but not a controlling one. *Woolf v. Smith,* 86 S.W.2d at 70. Other factors which may have significance are the use to which the land is put, the uses of nearby lands, the occupation of the owner and the proximity of the home to others in the surrounding area. *Commerce Farm Credit Co. v. Sales,* 288 S.W. 802, 804 (Tex.Com.

* This case was submitted to the court for decision prior to Justice Boochever's resignation.

App.1926). Generally, property used for agriculture or husbandry is entitled to the rural homestead exemption. *Schultz v. Schultz*, 45 S.W.2d 312, 313 (Tex.Civ.App. 1931).

 In the instant case, we agree with the superior court that the statutory term "town" has no technical meaning since under Title 29 of the Alaska Statutes, which treats municipal government, incorporated municipalities may be either boroughs or cities, but not towns.[1] We thus construe application of AS 09.35.090(a) to turn on the urban or rural character of the property claimed to be exempt, regardless of the property's situs outside corporate municipal limits.

The superior court, while utilizing this standard, did so without the benefit of any factual inquiry and held the subdivided status of the Daltons' land to conclusively preclude any claim to the rural homestead exemption. We therefore remand the case to the superior court for a remand to the district court to determine the character of the property in question.

REMANDED.

CONNOR, Justice, with whom RABINOWITZ, Chief Justice joins, dissenting.

I respectfully disagree with the majority opinion.

First, I cannot agree that the term "town" has no technical meaning in Alaska law. Second, in my opinion, the "geographic" test, and not the "character of the land" test, should be adopted as the law of Alaska. My reasons for these views are set forth below.

1. AS 29.08.030 provides:
 *Classes of general law.* General law municipalities are of five classes:
 (1) first class boroughs;
 (2) second class boroughs;
 (3) third class boroughs;
 (4) first class cities;
 (5) second class cities.

1. *See* Carter's Code, sec. 282; D. Marshall, "Homestead Exemption—Oregon Law," 20 Ore.L.Rev. 328 (1941).

At the outset it should be noted that this statute originated in Oregon in 1893, and it was adopted as the law of Alaska in Carter's Code in 1900.[1] The language which is critical to the case at bar has remained unchanged in both Alaska and Oregon until now.[2]

My research does not reveal any case law in either Oregon or Alaska which is helpful in construing this language. However, the legislative history of this provision in Alaska is of value in shedding light on how this language should be read. When viewed in historical perspective, there is no ambiguity or imprecision in the use of the word "town" as opposed to "city." The first municipal corporations in Alaska were known as "towns."[3] Carter's Code, (1900) Part V, ch. 21, was entitled "Incorporation of Towns," although the body of that chapter did not refer to towns as such and merely referred to the "corporation."

By Ch. 1778, Act of April 28, 1904, 33 Stat. 529, Congress amended the laws relating to municipal corporations in Alaska. Section 1 of that act stated that any community in Alaska having three hundred or more permanent inhabitants "may incorporate as a municipal corporation termed a *town* in the manner hereinafter provided." (Emphasis supplied.) The term "town" remained in the statute until 1923.

Ch. 97, § 1, SLA 1923, states: "Any community having four hundred or more permanent inhabitants may form a municipal corporation, termed a *city*, in the manner hereinafter provided." (Emphasis supplied.) Therefore, during territorial days the terms "town" and "city" were used interchangeably. It is understandable that the legislature would want to retain the

2. *See* Ore.Rev.St., 23.250.

3. From 1900 until 1923 the "town" was the only type of municipal corporation known in Alaska, although arguably an entity known as a "city" could have been formed. A perusal of the early Alaska law reports reveals that municipal corporations litigated only as "towns" until 1923, and for a long period thereafter.

words "town or city" in what is now AS 09.35.090(a), to make it plain that the statute referred to both of these entities.

In 1962 the legislature repealed and reenacted this statute as AS 09.35.090(a). At that time the Alaska Constitution, art. X, secs. 2 and 3, divided the state into organized and unorganized boroughs and cities. Whether the legislature left the reference to a "town" in AS 09.35.090(a) deliberately or through an oversight is not important. Clearly the legislature in 1962 did not add the term "borough" to the statute, nor did it do so in 1972 and 1976, when it altered the amount of the exemption to $12,000 and $19,000, respectively.[4] As a matter of logic, one reading the statute in light of its legislative history can only conclude that land within boroughs but outside cities was not to be taken to mean land within "a town or city."

Because the language of the statute is clear, I view this as a case in which the "plain meaning" rule of statutory interpretation should be applied. I am fortified in this view by the nearly universal policy of construing debtor's exemption statutes liberally in favor of debtors.[5] Thus, even if it can be said that the word "town" somehow creates an ambiguity, that ambiguity should be resolved in favor of the debtor.

Lastly, from the standpoint of general policy, I think that adopting the "character of the land" test is unfortunate, because it is bound to generate needless and cumbersome litigation in a variety of fact situations. On the other hand, the "geographic" test, which under my reading of the statute is mandated, is simple to apply and will undoubtedly avoid the need for litigation in those same instances.[6]

---

**4.** Ch. 129, § 1, SLA 1972; Ch. 231, § 1, SLA 1976.

**5.** *See* D. Marshall, n. 1, *supra* at 331; *Wendler v. Brenneman*, 7 Alaska 13, 18 (3rd Div. 1923).

**6.** This is obviously a problem which should be addressed by the legislature.