**In re Frank E. SHELL, Debtor.**

**No. A02–00751–DMD.**

United States Bankruptcy Court,
D. Alaska.

July 1, 2003.

Marvin Clark, Marvin H. Clark, Jr., P.C., Wasilla, AK, for the Debtor.

William D. Artus, Anchorage, AK, for Trustee Kenneth Battley.

## *MEMORANDUM REGARDING OBJECTIONS TO EXEMPTIONS*

DONALD MACDONALD, IV, Chief Judge.

Frank Shell is a disabled carpenter who lives in Wasilla. Several years ago, Shell suffered a severe head injury and incurred nearly $200,000.00 in medical bills. He continues to suffer tremors as a result of the injury and has been unable to return to work as a carpenter. His primary source of income has been from a six-plex he owns in Wasilla. He lives in one of the units, collects rents from the other units and maintains the premises. Occasionally he has found part-time work on the Anchorage docks in the summer to supplement his income.

Shell filed for chapter 7 relief on July 26, 2002. On his bankruptcy schedules, he valued the six-plex at $275,000.00 with an encumbrance of $194,676.00 due Wells Fargo on a first mortgage. Shell elected to claim exemptions under Alaska law and claimed a homestead exemption of $64,800.00 in his six-plex. The chapter 7 trustee, Kenneth Battley, has objected to Shell's homestead exemption. Battley has found a willing buyer for the six-plex for $300,000.00. Battley contends Shell is entitled to exempt just one-sixth of the equity in the six-plex, rather than the full homestead exemption amount of $64,800.00, because the debtor uses just one-sixth of the property as his principal residence. Battley also objects to Shell's exemption of rents, certain firearms and tools.

*Analysis*

■ In support of his contention that the debtor is not entitled to a full homestead exemption in the six-plex, the trustee has cited a number of authorities from Florida,[1] New York,[2] Kansas [3] and New Hampshire.[4] In each of these jurisdictions, courts have limited a debtor's homestead claim in property used both as a residence and for income production to a fractional share based on the percentage of

1. *Englander v. Mills (In re Englander)*, 95 F.3d 1028 (11th Cir.1996); *First Leasing & Funding of Florida, Inc. v. Fiedler*, 591 So.2d 1152 (Fla.App.1992); *In re Oliver*, 228 B.R. 771 (Bankr.M.D.Fla.1998); *Matter of Aliotta*, 68 B.R. 281 (Bankr.M.D.Fla.1986).

2. *In re Hager*, 74 B.R. 198 (Bankr.N.D.N.Y. 1987).

3. *Belcher v. Turner*, 579 F.2d 73 (10th Cir. 1978).

4. *Kilburn v. Filby (In re Filby)*, 225 B.R. 532 (Bankr.D.N.H.1998); *In re Mirulla*, 163 B.R. 910 (Bankr.D.N.H.1994).

the property deemed "residential." Relying on these authorities, the trustee argues that the debtor's homestead rights under A.S. 09.38.010 must be limited to one-sixth of the net equity in the six-plex. I respectfully disagree.

■ Homestead laws vary from state to state and there is no consensus among all the states as to whether a homestead claim is lost if a portion of the premises is used for rental or other commercial purposes.[5] Several bankruptcy courts addressing this issue have reached the conclusion that a debtor is entitled to a full homestead exemption in property with dual uses, so long as the debtor actually resides on the property.[6] When a debtor has claimed a homestead exemption under state law, his entitlement to the exemption must be determined by examining the applicable state law, rather than relying upon decisions from other jurisdictions.[7]

The applicable statute here is A.S. 09.38.010(a), which provides:

An individual is entitled to an exemption as a homestead of the individual's interest in property in this state used as the principal residence of the individual or the dependents of the individual, but

the value of the homestead may not exceed [$64,800.00].[8]

The homestead statute has two requirements: an individual must have an interest in property in Alaska, and that property must be his or her principal residence. A "principal residence" is defined as "the actual dwelling place of an individual or dependents of the individual and includes real and personal property."[9] Frank Shell satisfies both requirements of the Alaska homestead statute. Shell is an individual who has an interest in property in Alaska; he owns a six-plex in Wasilla. The six-plex is his dwelling place and principal residence. The six-plex has an equity of approximately $106,000.00. Utilizing the plain meaning of the words of the statute, Frank Shell is entitled to a full homestead exemption of $64,800.00. Ordinarily, federal courts end their analysis with the plain meaning of a statute when construing federal legislation.[10]

■ Alaska state courts, however, consider the purpose and the legislative history of a state statute when construing its language. "Statutory construction begins with an analysis of the language of the statute construed in view of its purpose."[11]

---

**5.** *See* 40 Am Jur 2d, Homestead § 75 [West 1999].

**6.** *See In re Brizida,* 276 B.R. 316 (Bankr. D.Mass.2002) [trustee's objection to debtor's homestead exemption in a three family house overruled, based on applicable state statute]; *In re Trigonis,* 224 B.R. 152 (Bankr.D.Nev. 1998) [trustee's objection to debtor's homestead exemption in a four-plex overruled, based on applicable Nevada statute]; *In re Vizentinis,* 175 B.R. 824 (Bankr.E.D.N.Y. 1994) [building with four apartments exempt]; *In re Makarewicz,* 126 B.R. 127 (Bankr.S.D.Fla.1991) [residence with two apartments in garage found to be exempt]; *In re Patten,* 71 B.R. 574 (Bankr.D.N.D.1987) [two story building with two apartments on second floor, and commercial tenants on first

floor and in basement found to be an exempt homestead].

**7.** *Brizida,* 276 B.R. at 322.

**8.** AS 09.38.010(a); 8 AAC 95.030(a) [as to value limitation].

**9.** AS 09.38.500(12).

**10.** *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (citing *United States v. Ron Pair Enterp., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)).

**11.** *Borg–Warner Corp. v. Avco Corp.,* 850 P.2d 628, 633 n. 12 (Alaska 1993) (citation omitted).

The objective of statutory construction is to give effect to the intent of the legislature, with due regard for the meaning that the statutory language conveys to others. Though we give unambiguous statutory language its ordinary and common meaning, we have rejected the "plain meaning" rule as an exclusionary rule, and we may look to legislative history as a guide to construing a statute's words. The plainer the meaning of the statute, the more persuasive any legislative history to the contrary must be.[12]

Alaska's current homestead exemption, A.S. 09.38.010, has evolved slowly over the last century. A civil code and a code of civil procedure were codified by Congress for the territory of Alaska in June of 1900.[13] A homestead provision was included, which stated, in part,

**Sec. 272. Exemptions of homesteads from judicial sale.** The homestead of any family, or the proceeds thereof, shall be exempt from judicial sale for the satisfaction of any liability hereafter contracted for or for the satisfaction of any judgment hereafter obtained on such debt. Such homestead must be the actual abode of and owned by such family or some members thereof. It shall not exceed two thousand, five hundred dollars in value, nor exceed one hundred and sixty acres in extent if not located in a town or city laid off into blocks or lots, or if located in any such town or city, then it shall not exceed one-fourth of one acre .... [14]

The Alaska homestead exemption remained virtually unchanged from 1900 through early statehood.[15] The exemption had four components: actual abode of the family, ownership by at least one family member, a value limitation, and acreage limitations with an urban-rural distinction. The dollar amount of the exemption increased to $8,000.00 in 1957,[16] and $12,000.00 in 1972.[17] Additionally, in 1972, a new subsection was added for the "residence exemption," which allowed the exemption of a trailer home or mobile home if it was a family's actual abode, to a value of $8,000.00.[18] The urban-rural distinctions as to size of the parcel remained in the law until 1982, when the current homestead exemption, A.S. 09.38.010, was adopted as part of comprehensive legislation revising Alaska's exemption statutes.[19]

The early homestead statute was examined by the territorial court in 1923, when Anchorage pioneers A.J. and Florence Wendler were involved in litigation to pre-

**12.** *City of Dillingham v. CH2M Hill Northwest, Inc.*, 873 P.2d 1271, 1276 (Alaska 1994) (citations omitted).

**13.** *First Nat'l Bank of Fairbanks v. Stout*, 9 Alaska 400, 403 (D.Alaska. Terr.1938); *see also Currier v. Mihalcik*, 5 Alaska 251 (D.Alaska. Terr.1915); Frederic E. Brown, *The Sources of the Alaska and Oregon Codes, Part II: The Codes and Alaska, 1867–1901*, 2 UCLA—ALASKA LAW REVIEW 87, 108–09 (1973).

**14.** Carter's Alaska Codes, Part IV, Ch. 31, § 272 [Callaghan and Co.1907].

**15.** *See The Compiled Laws of the Territory of Alaska 1913*, Title XIII, Civil Code of Procedure § 1104 (Gov't Printing Office 1919); *Compiled Laws of Alaska 1933*, Title Three,

Code of Civil Procedure § 3723 (Daily Alaska Empire Publishers 1933); 3 *Compiled Laws of Alaska 1949* § 55–9–79 (Bancroft–Whitney Co.1948); AS 09.35.090 (The Michie Co.1962).

**16.** 3 *Alaska Compiled Laws Annotated (Cumulative Supplement)* § 55–9–79 (Equity Publ. Corp.1958).

**17.** *Alaska Statutes 1972 Cumulative Supplement*, § 09.35.090(a) (The Michie Co.1972).

**18.** *Id.* at 09.35.090(b).

**19.** 1982 SLA ch. 62, §§ 2, 14 (Alaska 1982).

serve their home. In *Wendler v. Brenneman*,[20] A.J. Wendler's Seattle creditors sought a judicial sale of his family residence. Title to the property had been held by Florence Wendler and Ray Larson as tenants in common. They had purchased the lot from the United States land agent in Anchorage for $555.00 and immediately erected the building in 1915. The property was located at what is now 4th Avenue and I Street in downtown Anchorage.[21] The upper story of the building consisted of two apartments. Larson and his family occupied one of the apartments; the Wendlers and their family the other. Larson and A.J. Wendler ran a grocery business on the first floor. The Wendlers and Larsons sued to enjoin the creditor's foreclosure, claiming a homestead exemption in the entirety of the property.

The territorial district court concluded the judicial sale of the property could not go forward. First, it found that Florence Wendler and Ray Larson could claim homesteads as tenants in common; fee ownership was not required.[22] Moreover, the fact that the first floor of the property was used as a store premises to conduct a grocery business did not invalidate their homestead exemptions. The court found that "the homestead character of property is not destroyed by its use for business purposes while at the same time being occupied mainly as a residence."[23] Noting that neither the Wendlers nor the Larsons had any other property, the court stated that "it would require an illiberal construc-

tion of our homestead laws which would deprive both families of their right to a place to live" if the homestead claim were denied.[24] Since both elements necessary for a homestead were present, "actual abode of a family and ownership by a member of that family," the homestead claims were upheld.[25]

These two requirements for claiming a homestead, actual abode and ownership by a member of the family, have survived the 1982 revisions to the Alaska exemption statutes. Further, the policies underlying the 1982 revisions reflect an intent to retain a liberal exemption scheme in Alaska. A memorandum from the Alaska Code Revision Commission discussed the purpose of the revisions, as follows:

> The commission has determined that the exemption laws of the state are out of date and do not provide adequate protection for property in possession of an individual which is necessary to provide the basic necessities of life for the individual and his family . . . .

> The Alaska Code Revision Commission has attempted to present suggested legislation which balances the often-competing interests of both debtors and creditors. Creditors need simple and inexpensive procedures for collecting unsecured debts while debtors must have protection for their property so that they are not deprived of property which supplies the basic necessities of

**20.** 7 Alaska 13, 1923 WL 23 (D.Alaska. Terr. 1923).

**21.** The building was moved to 4th Avenue and D Street in Anchorage in 1984. It is known as the Wendler Building. At one time, it housed the historic "Club 25" restaurant and currently serves as offices for Anchorage bankruptcy trustee Larry Compton. The building's original site was purchased by Hickel Investment Company, owner of the

Captain Cook Hotel, and is now used for a lawn and gazebo adjacent to the hotel.

**22.** *Wendler,* 7 Alaska at 17–18.

**23.** *Id.* at 19.

**24.** *Id.*

**25.** *Id.*

life or be required to seek public assistance benefits . . . . [26]

The legislature used similar language when adopting the new exemption legislation:

It is the intent of the legislature to modernize the procedures for execution on a judgment and to afford a judgment debtor adequate protection of his personal property and income necessary to provide for his needs and the needs of his dependents while remaining independent of public assistance.[27]

The new homestead exemption provision provided, in part:

An individual is entitled to an exemption as a homestead of his interest in property in this state used as the principal residence of that individual or his dependents, but the value of the homestead exemption may not exceed $27,000.00.[28]

The legislature specifically allowed property owned in common or by the entirety to be used as a homestead, but the exemption could not be "stacked" by such tenants to increase the amount of the homestead.[29] The amount of the exemption was increased to $54,000.00 in 1988.[30] The homestead amount is indexed for inflation and is currently $64,800.00.[31]

■ There is nothing in the Alaska case law, statutes or legislative history to indicate that a homestead exemption is limited exclusively to residential property. Alaska's initial homestead laws limited the value of the homestead and the acreage but placed no restrictions on dual use property. The only requirements for claiming a homestead were that it was the family's actual abode and owned by a member of the family. The historic *Wendler* decision of 1923 specifically allowed a full homestead exemption for income producing property that was also used as a home. In the eighty years that have followed that decision, no Alaska legislature has tried to overrule or limit *Wendler* through legislation. Instead, the dollar amount allowed for a homestead has steadily increased. Additionally, the homestead exemption has been simplified through removal of the acreage limitations found in preceding laws. But the two essential elements of the homestead exemption, actual abode [32] and ownership, have survived legislative revision. Alaska's legislature intended to protect property that supplies the basic necessities of life in Alaska, such as shelter, and to keep indigent debtors off of public assistance. This intention would be ill-served by limiting a disabled carpenter's homestead to one sixth of the equity in his residence, a six-plex. The legislative history of the statute supports its plain meaning. Frank Shell is entitled to a full homestead exemption under Alaska law.

■ The trustee has also objected to the debtor's claim of exemptions for net rental income from the six-plex, certain guns, and miscellaneous hand and power tools. With regard to the rental income, on his amended Schedule C, Shell claimed

26. House Journal, State of Alaska, 12th Leg., 1st Sess. at pp. 151–52 (February 4, 1981)(reprinting in full a Jan. 9, 1981 Mem. of the Alaska Code Comm'n Re: Revision of State Exemptions Law).

27. 1982 SLA Ch. 62, § 1 (Alaska 1982).

28. *Id.* at § 2.

29. *Id.*

30. 1988 SLA Ch. 135, §§ 1, 2 (Alaska 1988).

31. A.S. 09.38.115; 8 AAC 95.030(a).

32. Actual abode is now called the "principal residence" which, as noted above, is defined as "the actual dwelling place of an individual or dependents of the individual and includes real and personal property." AS 09.38.010(a); 09.30.500(12).

$1,267.88 in net "earnings" per month as exempt property. I find the debtor's net rental income to be a liquid asset, similar to the note payments found exempt in *In re Melin.*[33] They total less than the $1,680.00 per month allowed under AS 09.38.030(b) and 8 A.A.C. 95.030(d)(2), and constitute exempt property. Shell's net income from the six-plex is exempt property.

■ The debtor claimed six guns as exempt "household goods" under A.S. 09.38.020(a). The trustee contends he may only exempt one gun. On this point, I agree. In accordance with *In re Fitzgerrell,*[34] Mr. Shell may claim only one gun as exempt.

■ The trustee also seeks to deny Shell's tools of the trade exemption under A.S. 09.38.020(c) for certain hand and power tools. The trustee contends Shell has no right to claim the tools as exempt, because he no longer works as a carpenter or as the owner of a handyman business. The debtor has been actively managing and maintaining the six-plex, however. The tools assist him in the production of rental income. The trustee's objections to the debtor's exemption claim for tools of the trade will be overruled.

*Conclusion*

The trustee's objections to the debtor's homestead exemption and his exemption for tools of the trade will be overruled. The trustee's objection to the debtor's exemption of six guns will be sustained; the debtor may only claim one gun exempt. An order and judgment will be entered consistent with this memorandum.

**33.** 6 A.B.R. 310 (Bankr.D.Alaska 2000); *aff'd* 6 A.B.R. 481 (D.Alaska 2000).

**34.** 4 A.B.R. 292 (Bankr.D.Alaska 1996).