## HENRY C. THURSTON *vs.* JACOB G. MADDOCKS.

A cause of action upon an account current is deemed to have accrued as early as the date of the last charge, although there are later items of credit.

An estate of homestead under a deed does not relate back to the date of a bond for the deed, but begins at the date of the deed.

A note given for the price of land is not "a debt contracted previous to the purchase thereof," within the meaning of *St.* 1855, *c.* 238, § 3, and cannot be enforced upon the land, if a right of homestead under that statute exists therein.

No estate of homestead exists in land held in common and undivided.

CHAPMAN, J. This is a writ of entry. The demanded premises consist of a parcel of land made up of two adjoining lots, one of which is described in the agreed statement of facts under which this case is presented to the court as containing nine hundred and sixty feet, and the other as having been appraised at $100. The demandant claims title under the levy of two executions. The first execution was issued upon a judgment recovered in an action brought by the demandant against the tenant, upon a promissory note signed by the latter and dated November 24th 1857, and upon an account, the last charge in which was dated April 21st 1860. This execution was levied upon a portion of the first lot, which was conveyed by Charles Barnes to the tenant by deed dated August 9th 1860. It is contended, in the first place, that the cause of action in the suit in which this execution was recovered did not accrue until after the tenant acquired his title to the lot in question, because it appears that in the account there were some items of credit of a later date than the date of the deed. But the cause of

action must be deemed to have accrued as early as the date of the last charge, and it therefore existed before the date of the deed to the tenant; and by *St.* 1857, *c.* 298, § 4, the land was not for this reason exempt from seizure on execution.

It also appears that on the 28th of April 1857, one Taft being then the owner of this lot, executed to the tenant and Joseph Maddocks a bond, in which he covenanted to convey the same to them, upon certain conditions therein stated, on the 1st of April 1860; and the tenant contends that his title relates back to the date of this bond, so that he is entitled to a homestead estate as against debts accruing subsequently.

But the *St.* of 1855, *c.* 238, does not include such a mere equitable title as is created by a bond for a deed. It contains no provision that can fairly be construed to prevent a husband from cancelling or assigning such a bond, without the consent of his wife. An estate in which a homestead may exist is such as is conveyed by deed; and, after the vesting of the title, the wife may protect herself by refusing to join in a conveyance of it.

It is said that the language of the statute, giving the homestead right to householders in property " owned or rightly possessed by lease or otherwise," is broad enough to include such equitable title. Upon this construction it would extend to tenancies at will, which would be absurd. The object of this clause in *St.* 1855, *c.* 238, obviously was to create a homestead right in a house owned by the occupant, but standing on leased land; so that the house should be exempted from attachment though it was subject to removal, and though there was no homestead right in the land.

It further appears, however, that Taft did not convey the lot under his bond, but that on the 12th of July 1860 he conveyed it to Barnes, who on the 2d of the following August conveyed it to the tenant's wife; and that on the 9th of August the tenant and his wife united in a reconveyance of it to Barnes, who on the same day executed to the tenant the deed under which the latter now claims his title. Upon these facts, the tenant's title cannot in any sense be regarded as accruing prior to the

deed to him of August 9th, because the deed of that date by himself and his wife conveyed all homestead rights.

The tenant further contends that a quitclaim deed of this land made by himself and Joseph Maddocks to the demandant on the 17th of August 1857 estops the latter to deny that a right of homestead then existed in him. We cannot see how such an estoppel can arise out of such a deed under the circumstances of this case.

The second execution was issued upon a judgment recovered in an action brought by the demandant against the tenant and Joseph Maddocks, on two notes signed by them, the first of which was dated April 2d 1857, and the second September 11th 1857; and it was levied upon what was left of the first lot, as to which we have seen that there was no right of homestead; and also upon the second lot, which was conveyed on the 2d of April 1857 by the demandant to the defendants in that action to hold as tenants in common. The *St.* of 1855, *c.* 238, was then in force. Of course the tenant could have no homestead estate in more than one undivided half of it. And as to this half, the demandant denies that any homestead estate exists for two reasons:

1. One note which was a part of the cause of action was given by the tenant and Joseph Maddocks for the purchase of the land. But a note given for the purchase of the land cannot be regarded as " a debt contracted previous to the purchase thereof," and therefore is not within *St.* 1855, *c.* 238, § 3. This defect in the statute was remedied in *St.* 1857, *c.* 298, § 4.

2. The tenant took only an undivided half of the estate in common with Joseph Maddocks, and the demandant denies that the homestead acts apply to estates of which the party is only a tenant in common.

The words of the statute create a right of homestead " in the farm or lot of land and buildings thereon owned or rightly possessed by him as a residence." It requires a very liberal interpretation to extend this to land and buildings of which one has only a partial ownership and possession in common with others.

If the legislature had intended to include ownership or possession in common, they would have been likely to make provision as to how many tenants in common may have homesteads in the same lot or building; to regulate the relations existing between such tenants while the estate was undivided; and to mention the effects of partition. It is manifest that partition might greatly increase or diminish the value of a homestead estate, or destroy it altogether in some cases. As the right under an existing statute is not created by operation of law, but must either be set forth in the deed of conveyance, or created afterwards by a declaration in writing, signed, sealed, acknowledged and recorded, there will probably be no serious inconvenience arising from a more restricted interpretation, which shall require the person who is about to create a right of homestead to sever his interest from that of co-tenants. If inconveniences shall arise, they may be remedied by legislation which shall meet all the exigencies of such cases. The best interpretation which the court are able to give to the statute is, to limit it to cases of sole ownership or possession.

*Judgment for the demandant.*

*I. Sumner*, for the demandant.

*T. P. Pingree, Jr.*, for the tenant.