## DANIEL SILLOWAY *vs.* BENJAMIN BROWN.
### SAME *vs.* SAME.

An estate of homestead acquired under *St.* 1855, *c.* 238, is not defeated by the death of the wife of the householder and the removal of his children from the premises, if he continues to occupy them as his home.

The homestead estate to which an insolvent debtor is entitled cannot be set off to him by the court of insolvency, under Gen. Sts. *c.* 104, § 10, after his assignee in insolvency has conveyed away all his interest in the premises.

If land of greater value than eight hundred dollars is occupied by one who is entitled to an estate of homestead therein, which has not been duly set out to him, and the surplus has been alienated and the deed delivered upon the premises, the owner of the homestead and the owner of the residue of the estate are tenants in common; and if the former wholly excludes the latter from the premises, he is liable therefor in an action in the nature of trespass *quare clausum fregit*, although the latter has never had any actual possession; but he is not liable in an action of replevin for taking all the crops.

Before entry or suit brought to recover possession, a mortgagee of land cannot, by his consent that another may occupy the mortgaged premises, give to such person the right to exclude the owner of the equity of redemption therefrom.

TORT for breaking and· entering the plaintiff's ̔close; and REPLEVIN of a quantity of hay which grew upon the premises. Trial in the superior court, without a jury, before *Ames*, J., who found the facts to be as follows :

The defendant in July 1853 purchased a lot of land in West Newbury, and in March 1854 mortgaged it to secure the payment of his promissory note for $1000, which is still unpaid. He has lived on the premises ever since September 1853, at which time his family consisted of his wife and son. His wife died in August 1858, and he afterwards employed a female housekeeper, who remained with him until 1864. His son became of age in 1855, but continued to live with �.him until November 1861, and has never been married. The defendant petitioned for the benefit of the insolvent laws in January 1862 and his assignee in insolvency on the 17th of March 1862 sold by auction and conveyed all the debtor's right in the premises, subject to the mortgage and to his right of homestead, to one who afterwards conveyed his title to the plaintiff by deed delivered on the premises without notice to or knowledge of the defendant. Upon application made by the defendant on the 20th of

March 1862, the court of insolvency caused this land to be appraised by three men, one appointed by the debtor, one by the assignee, and the third by the court, who appraised it at the sum of $1600, which was its actual value, and set off to the defendant so much of it as appeared to them to be of the value of $800. The mortgagee never entered for foreclosure or for any other purpose. The defendant relied on certain facts not material to be stated, as showing that the mortgagee had consented that he might remain in possession. The plaintiff, after receiving his deed, gave notice to the defendant that he must vacate the premises, which the defendant refused to do. The plaintiff then attempted to enter and get into possession, but was resisted by the defendant and prevented from occupying or getting effective possession of the place; and this was the trespass complained of in the first action. About three fourths of the hay replevied in the second action grew on that part of the premises which had been set off to the defendant for his homestead as above stated, and the whole was stored together in the same barn in the summer of 1862.

Upon these facts, the judge gave judgment *pro forma* for the defendant in each action, and the plaintiff alleged exceptions.

*S. B. Ives, Jr.,* for the plaintiff.

*J. C. Perkins,* for the defendant. The defendant was in possession under the mortgagee; and the plaintiff was, as to the mortgagee, at best but a mere tenant at will, out of possession, and cannot maintain trespass against the mortgagee or any one claiming under him. *Howe* v. *Lewis,* 14 Pick. 329, and cases cited.

Although trespass will lie for an actual ouster of one who is turned out of possession, there was in this case no ouster. Ouster consists in putting one out of possession, and not in keeping one out who is already dispossessed. 2 Bl. Com. 167, 173, 197–202. In this case there was no ouster, for the plaintiff never had possession. The defendant simply retained his possession. The merely formal act of delivering the deed to the plaintiff on the premises did not disturb the defendant's posses
s'on, or constitute the actual or constructive possession necessary

to enable the plaintiff to maintain trespass. *Chadbourne* v. *Straw,* 22 Maine, 450. *Bigelow* v. *Jones,* 10 Pick. 161. *Tyler* v. *Smith,* 8 Met. 599. *Litchfield* v. *Ready,* 5 Exch. 939. In any event, the damages for the exclusion of the plaintiff should be merely nominal. *Bigelow* v. *Jones* and *Chadbourne* v. *Straw,* above cited. *Taylor* v. *Townsend,* 8 Mass. 411. And replevin would not lie for the crops.

The defendant had an estate of homestead, and the decree of the judge of insolvency, setting it out, is conclusive until reversed. And it did not appear but that the attempted entry of the plaintiff was on the portion of the premises thus set out.

GRAY, J. By the statute in force when the defendant acquired his title, there was " exempted, to the value of eight hundred dollars," from sale or levy on execution for subsequent debts, " the homestead farm or the lot and buildings thereon, occupied as a residence and owned by the debtor, or any such buildings owned by the debtor and so occupied on land not his own, but of which he shall be in rightful possession, by lease or otherwise, he being a householder and having a family," " such exemption " to continue after his death, for the benefit of his widow and children, some one of them continuing to occupy such homestead, until the majority of the youngest child and until the death of the widow; and " no conveyance by the husband of any property exempted as aforesaid " to be valid in law unless the wife joined in the deed. *St.* 1855, *c.* 238, §§ 1, 2, 5. All homestead rights thus acquired have been confirmed by subsequent statutes. *Clark* v. *Potter,* 13 Gray, 21. *Dulanty* v. *Pynchon,* 6 Allen, 511. Gen. Sts. *c.* 104, §§ 3, 15.

This homestead right of a householder in land owned by him is an estate for his life, and for the additional term of the continuous subsequent occupation of his widow or any of his minor children. It is secured to him by law for the common benefit of his wife and children as well as of himself, and is inalienable without his and her joint consent, and is thus held by a distinct title from that by which he holds any surplus or reversion of the same land, which may be alienated by him or taken on execution by his creditors. *Smith* v. *Provin,* 4 Allen,. 517. *White* v.

*Rice*, 5 Allen, 76. *Doyle* v. *Coburn*, 6 Allen, 71. A conveyance of the land by the husband with full covenants of warranty, or in fraud of his creditors, will not affect even his own right in the homestead during his wife's life ; and a levy of execution upon the land with her consent, or without notice of the exist- ence of the homestead right, will not defeat it. *Connor* v. *McMurray*, 2 Allen, 202. *Doyle* v. *Coburn*, 6 Allen, 72. *Castle* v. *Palmer*, Ib. 404. The homestead estate may be conveyed away in the manner prescribed by the statute, or terminated by ac- quiring another homestead elsewhere ; but if any acts of aban- donment, short of acquiring a new homestead, will defeat a homestead estate, they must be such as afford unequivocal evidence of an intent to abandon it. *Drury* v. *Bachelder*, 11 Gray, 214. *Connor* v. *McMurray*, 2 Allen, 204. *Dulanty* v. *Pynchon*, 6 Allen, 510. *Lazell* v. *Lazell*, 8 Allen, 576.

The homestead estate of the wife after the husband's death does not depend upon the existence of outstanding debts, and is exclusive of her right of dower in his real estate, and her allowance out of his personal property. *Monk* v. *Capen*, 5 Allen, 146. *Mercier* v. *Chace*, 11 Allen, 194. In *Woodward* v. *Lincoln*, 9 Allen, 241, it was suggested by Mr. Justice Dewey that it might be recovered by writ of homestead, in analogy to the writ of dower. It may be set off in the same manner as dower. Gen. Sts. *c.* 104, § 13. But it is so truly an estate in possession in the land, (differing in this respect from dower in this commonwealth, and from homestead rights in some states,) that it may be relied on by the widow, without having been first set off to her, in answer to a writ of entry to recover the land. *Parks* v. *Reilly*, 5 Allen, 77. *Sheafe* v. *O'Neil*, 9 Mass. 13. 4 Kent Com. (6th ed.) 62. *Howe* v. *Adams*, 28 Verm. 544, 545. *Foss* v. *Strachn*, 42 N. H. 40. The decisions in other states upon this subject differ in some other points from those of this court. We refrain from citing them, because they were made under different laws, and because the nature of this right in this commonwealth has been defined by our own stat- utes and decisions sufficiently to guide us in disposing of the points raised upon this bill of exceptions.

1. Although a homestead estate cannot be acquired except by a householder having a family, yet when once acquired, and still occupied by him, it has been held not to be defeated or lost by the death or absence of his wife and children. *Doyle* v. *Coburn,* 6 Allen, 73. Any other construction would render a husband, who had been deprived of his family by accident or disease, or by their desertion, without any fault of his, liable to be instantly turned out of his homestead by his creditors. As this defendant, at the time of the passage of the *St.* of 1855, *c.* 238, lived upon these premises as his homestead, with his wife and son, he acquired under that statute a homestead estate therein to the extent of eight hundred dollars in value, which was not affected by the subsequent death of his wife and the coming of age and departure of his son, so long as the father continued to occupy the premises as his home.

2. The Gen. Sts. *c.* 104, § 10, provide that a homestead estate to which an insolvent debtor is entitled in property of greater value than eight hundred dollars may be set off to him under the direction of the court of insolvency by three appraisers, appointed one by the debtor, one by his assignee in insolvency, and the third by the court, and the residue shall vest in and be disposed of by the assignee. The court of insolvency, being a court of peculiar and limited jurisdiction, has no authority to set off a homestead, except by express statute. *Woodward* v. *Lincoln,* 9 Allen, 240. After the land has ceased to be part of the fund for the payment of the debts of the insolvent, there is no good reason why the court of insolvency should exercise any jurisdiction over it for any purpose. The provisions, that the assignee shall appoint one of the appraisers, and that the residue of the estate remaining after the homestead has been set off shall vest in the assignee, show that the setting off, contemplated in this section, is while so much of the title as is not reserved and secured to the debtor remains in the assignee in insolvency; and cannot be made by appraisers, one of whom is appointed by the assignee, after the latter has sold and conveyed away all his title in the premises. After such sale and conveyance, so much of the title as is not included in the homestead

exemption is not in the assignee in insolvency, but in his grantee; the land has passed out of the jurisdiction of the court of insolvency; and the proper mode of setting off the homestead is by proceedings for partition, upon the petition either of the party entitled to the homestead, or of any other party interested, under the Gen. Sts. *c.* 104, § 9. In this case, the debtor's application to the judge of insolvency not having been made until after the assignee in insolvency had parted with all his interest in the premises, and the purchaser of that interest having had no opportunity to be heard, the proceedings in the court of insolvency for setting off the homestead were wholly void, and did not bind either the defendant or the plaintiff. *Mercier* v. *Chace*, 9 Allen, 242.

3. The defendant, then, occupying the land, and having an estate of homestead therein, which had not been set off to him, what was the nature of his interest and of his relation to the purchaser of the residue of the land? The land was of greater value than the law allows to be exempted as a homestead, the title of the land, subject to the right of homestead, had passed out of him, and he, continuing to occupy the premises, held by a distinct title, for his own life at least, (though defeasible by alienation according to law, or by acquiring another homestead,) an undivided part of the land to the extent of the value of the homestead estate. The right of homestead, secured to a householder by the *St.* of 1855, *c.* 238, does not differ in its nature from that acquired under the *St.* of 1857, *c.* 298, or the Gen. Sts. *c.* 104. Judgment recovered against him or his widow upon a writ of entry, either in ordinary form or to foreclose a mortgage, would be subject to his estate of homestead, and to the possession incident thereto. *Castle* v. *Palmer*, 6 Allen, 401. *Doyle* v. *Coburn*, Ib. 71. Upon the levy of an execution by extent upon the land, the amount of the homestead exemption, in the absence of any statute providing otherwise, might be deducted from the appraised value of the land. *Pittsfield Bank* v. *Howk*, 4 Allen, 347. *Castle* v. *Palmer*, 6 Allen, 403. The estate of the judgment creditor would be thus left in common with that of the owner of the homestead, much as in

the case of a levy upon the interest of one tenant in common. *Bartlet* v. *Harlow*, 12 Mass. 348. Rev. Sts. *c.* 73, § 9, and commissioners' note. Gen. Sts. *c.* 103, §§ 9, 10. The homestead estate might by express statute be set off by partition upon the application of either party, like an ordinary estate in common. Gen. Sts. *c.* 104, § 9. Or upon a bill in equity to redeem the land from a mortgage, it might be set off by commissioners. *Pittsfield Bank* v. *Howk*, 4 Allen, 350. The homestead estate differs indeed from ordinary estates held in common, in not being an aliquot part of the land, but measured by value only, which may be constantly fluctuating. See *Richards* v. *Chace*, 2 Gray, 385. And this court has held that a homestead right cannot be originally acquired in land held by the claimant of the homestead in common with a stranger. *Thurston* v. *Maddocks*, 6 Allen, 427. But when an estate of homestead has once been acquired in land of a greater value than the limit of the homestead exemption, and the surplus has been alienated by levy of execution or sale according to law, the owner of the homestead and the owner of the residue each have a right of immediate possession and enjoyment of the land, as is clearly shown by the decision, already cited, that the owner of the residue may maintain a writ of entry to recover the land subject to the right of homestead and to the possession incident thereto. *Castle* v. *Palmer*, 6 Allen, 401. Their rights in this respect are exactly those of tenants in common, according to the elementary defini-.ion. "Tenants in common are such as hold by several and distinct titles, but by unity of possession; because none knoweth his own severalty, and therefore they all occupy promiscuously. This tenancy therefore happens where there is a unity of possession merely, but perhaps an entire disunion of interest, of title, and of time." 2 Bl. Com. 191. The facts that the defendant had an estate for life, and the plaintiff an estate in fee; that the defendant held by virtue of the homestead act, and the plaintiff by purchase from the defendant's assignee in insolvency; and that the defendant acquired his title long before the plaintiff purchased his; do not make them the less tenants in common by reason of their unity of possession.

Silloway v. Brown.

The general rule is well settled that one tenant in common cannot maintain an action of trespass against another for breaking and entering the close owned in common, and taking the crops ; because each has an equal right of entry, occupation and enjoyment, and the possession of one is presumed to be the possession of all. Litt. § 323. *Keay* v. *Goodwin*, 16 Mass. 4. But if one does an act which puts an end to the tenancy in common, either by destroying the common estate, or by ousting his co-tenant therefrom, the latter may maintain trespass *quare clausum fregit* against him, for otherwise he would have no adequate remedy. Lord Coke cites cases from the year books which show that one tenant in common of a dove-house may maintain such an action against his co-tenant for destroying the flight of doves, or one tenant in common of a park for destroying all the deer, or one tenant in common of land for destroying mete stones thereon. Co. Litt. 200. So in a well considered case in Maine it was held that one tenant in common of a mill and land might maintain such an action against his co-tenant for destroying the mill. *Maddox* v. *Goddard*, 15 Maine, 221. The rule is the same if the wrongdoer, instead of destroying the common property, ousts his co-tenant and wholly prevents his enjoyment of it. Littleton and Coke say that in such case the one ousted might have a writ of ejectment, and Coke adds that he might recover damages for the entry. Litt. §§ 322, 323. Co. Litt. 199 *b*. And in *Goodtitle* v. *Tombs*, 3 Wils. 118, it was held that after recovering judgment in ejectment he might have an action for mesne profits, in which Lord Chief Justice Wilmot and Mr. Justice Gould agreed that the damages would not be limited to the mere rent of the premises. It is now well settled in England that trespass *quare clausum fregit* may be maintained by one tenant in common against another for an actual expulsion or ouster from the premises. *Murray* v. *Hall*, 7 C. B. 441, overruling the *dictum* of Littledale, J. in *Cubitt* v. *Porter*, 8 B. & C. 269. *Stedman* v. *Smith*, 8 El. & Bl. 6, 7. The same doctrine has been adjudged in New York and Pennsylvania, and recognized in New Hampshire, and repeatedly by this court. *Erwin* v. *Olmsted*, 7 Cow. 129. *McJill* v. *Ash*, 7 Barr, 397

*Odiorne* v. *Lyford,* 9 N. H. 511. *Munroe* v. *Luke,* 1 Met. 467
472. *Bennett* v. *Clemence,* 6 Allen, 18, 19. There is no reason
why a tenant in common, rather than any other person put or
kept out of possession of his estate, should be denied the elec-
tion of suing in trespass, and limited to a writ of entry, in which
he could recover no damages for the injury to him by the expul-
sion or ouster. We are therefore satisfied that upon principle,
and according to the weight of authority, (notwithstanding the
able opinion of the supreme court of Vermont in *Wait* v. *Rich-
ardson,* 33 Verm. 190, to the contrary,) he may, under such cir-
cumstances, maintain trespass *quare clausum fregit.*

The defendant's resistance to the plaintiff's attempt to enter,
preventing him from occupying or getting effective possession
of the land, amounted to an actual ouster. Co. Litt. 199 *b.*
*Doe* v. *Prosser,* Cowp. 218. *Gordon* v. *Pearson,* 1 Mass. 323.
*Marcy* v. *Marcy,* 6 Met. 371. The alleged consent of the mort-
gagee gave the defendant no right to the possession of the prem-
ises as against the plaintiff, owning the equity of redemption,
before any actual entry had been made or suit for possession
brought by the mortgagee. *Mayo* v. *Fletcher,* 14 Pick. 531, 532.
The plaintiff was therefore entitled to maintain his action of
tort in the nature of trespass against the defendant for keeping
him out of possession, and in the first of these cases the excep-
tions must be sustained.

But one tenant in common cannot maintain trespass or re-
plevin for taking the crops against his co-tenant, who has an
equal right with him to the possession and enjoyment of the
land. The plaintiff's remedy for this, if any, was by action of
contract for his share of the proceeds, which has taken the place
in this commonwealth of the action of account given in Eng-
land by the *St.* of 4 & 5 Anne, *c.* 16, § 27. *Bigelow* v. *Jones*
10 Pick. 161. *Barnes* v. *Bartlett,* 15 Pick. 75. *Badger* v. *Holmes*
6 Gray, 118, 119, and cases cited. In the second case, there-
fore, the exceptions must be overruled. The objection, made at
the argument, that the homestead right was not duly pleaded in
the answer, does not appear to have been taken by the plaintiff
at the trial, when it might have been cured by amendment, and
is not therefore open to him upon these exceptions.