**In re Virgil HAGER, Debtor.**

**Bankruptcy No. 80–00200.**

United States Bankruptcy Court,
N.D. New York.

March 30, 1987.

See also 65 B.R. 27.

Goldberg, Harding & Talev, P.C., Syracuse, N.Y., for debtor; Harold P. Goldberg, of counsel.

Louis N. Blatt, Buffalo, N.Y., for Dr. Lattner.

Warren V. Blasland, Syracuse, N.Y., trustee.

## MEMORANDUM-DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

Debtor Virgil Hager ("Debtor") has, pursuant to § 522(f) of the Bankruptcy Code, 11 U.S.C. §§ 101–151326 ("Code"), moved for an Order vacating a judgment lien of record on the grounds the judgment impairs an exemption to which he would otherwise be entitled. The motion is contested by the judgment lien holder/creditor James F. Lattner ("Lattner"), and the matter was heard on September 29, 1986. Each party was given the opportunity to present evidence, cross examine, and submit memoranda. The following is issued pursuant to Fed.R.Bankr.Pro. 9014 and 7052.

### FINDINGS OF FACT

1. Debtor filed his petition for relief under Chapter 13 of the Code on February 21, 1980.

2. On or about December 20, 1979, Lattner recorded his judgment against Debtor in the amount of Twenty-Eight Thousand ($28,000.00) Dollars with the County Clerk of Oswego County, New York.

3. On or about December 20, 1979, Debtor, together with his wife Jean Hager, not a debtor in a case pending before this or any other court, was the owner of real property located on U.S. Route 11 North, Pulaski, in the Township of Richland, County of Oswego, New York.

4. On or about February 21, 1980, the Oswego County Savings Bank was the holder of a first mortgage interest in the property, and was due the outstanding sum of Fifty-Seven Thousand Eight Hundred Forty-Six Dollars and Seventy-Seven Cents ($57,846.77).

5. Prior to September, 1980, Debtor was engaged as a chiropractor and part-time minister in the American Baptist Ministry.

6. The real property improvements located on Debtor's property were constructed by Debtor in late 1976 at a cost of approximately One Hundred Thousand ($100,000.00) Dollars. Debtor borrowed approximately Seventy-Two Thousand ($72,-000.00) Dollars to pay for the construction, with the balance of the costs defrayed in part from sums received upon sale of a prior residence, as well as monies received from Lattner for the sale of a business. Debtor designed the real property improvements.

7. Theodore P. Lebro ("Lebro") testified on Debtors' behalf, and qualified as an expert witness. Lebro completed an appraisal of Debtors' real property, dated September 26, 1986. (Debtor's Exhibit 2). The purpose of Lebro's appraisal was to provide a market value of the Debtors' property as of February, 1980. Lebro testified that as of this date, the property:

   a. Contained 10.68 acres, more or less;

   b. was zoned agricultural/residential;

   c. had a highest and best use as rural residential property;

   d. was assessed for tax purposes at $3,500.00;

e. contained improvements of a single family frame home with brick facade and clapboards. The lower level of the building consisted of an office, reception area, two (2) small rooms, a halfbath, living room, a second half bath, dining room, kitchen with eating area family room, and laundry room. A second level consisted of three (3) bedrooms and two bathrooms;

f. had total living area of approximately 2407 square feet. Approximately 400–450 square feet of this total was comprised of the lower level's office, two (2) small rooms, half bath;

g. had an attached single car garage of approximately 590.96 square feet; and

h. had a cement block cellar of approximately 813.8 square feet;

8. Lebro provided his expert opinion as to the value of the property on February 11, 1980, based on both a cost approach method and market data method. An income approach was not utilized, as Lebro deemed it inappropriate for a building of this type. Lebro's utilization of a cost approach rendered a value of Seventy-Six Thousand Nine Hundred Fifty-Six Dollars and Ninety-Eight Cents ($76,956.98) (rounded to $76,975.00). His use of the market data method resulted in a value of Seventy-Six Thousand Nine Hundred Seventy-Five ($76,975.00) Dollars. His expert opinion was that as of February 11, 1980, the Debtors' property had a value of Seventy-Six Thousand Nine Hundred Seventy-Five ($76,975.00) Dollars.

9. Lebro admitted that the comparable properties used in conjunction with the market data method did not contain office areas.

10. The office area on the lower level is accessible through a separate outside entranceway. The entrance was used by patients Debtor treated as part of his chiropractic business. This entrance is not currently used by Debtor.

11. Debtor and his spouse have lived in the building since it was completed. Debtor used the office area in the edifice for the rendition of chiropractic and masseur services at the time he filed his petition for Chapter 7 relief. Debtor has since that time used the office area on occasion for uncompensated counseling during the course of his religious ministry. At one time, one of the smaller rooms was used for the uncompensated housing of a displaced widow. Since September, 1980, Debtor has not received income from the use of the office area of the building.

12. Debtor currently is a full-time minister for the First Baptist Church of Sandy Creek, New York.

13. Debtor and his spouse have filed federal tax returns for the years 1980, 1981, 1982, 1983, 1984, and 1985. On each of these returns is indicated his income, as well as that of his spouse. Debtor's occupation was changed between the time he filed his 1980 and 1981 tax returns.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction pursuant to 28 U.S.C. § 1334 and § 157(b)(2)(K) and (O).

2. The sole issues for determination are 1) at what date is the property to be valued for purposes of determining available exemptions; 2) what was the value of the property on the appropriate date; and 3) was the property used as Debtors' principal residence.

3. The value of the Debtors' real property as of the date of the filing of his petition seeking relief under Chapter 13 was Seventy-Six Thousand Nine Hundred Seventy-Five ($76,975.00) Dollars. At the time of the filing, a first mortgage interest in this property was held by the Oswego County Savings Bank with an outstanding balance of Fifty-Seven Thousand Eight Hundred Forty-Six Dollars and Seventy-Seven Cents ($57,846.77). Equity in said property was therefore Nineteen Thousand One Hundred Twenty-Eight Dollars and Twenty-Three Cents ($19,128.23).

4. Personal bankruptcy exemptions are determined and evaluated as of the date the petition for relief is filed.

*White v. Stump,* 266 U.S. 310, 313, 45 S.Ct. 103, 104, 69 L.Ed. 301 (1924); *In re Bartoszewski,* 36 B.R. 424 (Bankr.N.D.N.Y. 1984) (Marketos, B.J.); *Lawson v. Liberty Nat. Bank & Trust Co.,* 18 B.R. 384, 387 (W.D.N.Y.1982); *In re Dvoroznak,* 38 B.R. 178, 182 (Bankr.E.D.N.Y.1984).

5. Pursuant to Code § 522(b)(1), New York State chose to "opt out" of the exemption scheme provided in Code § 522(d)(1)–(11). *See* N.Y.Debt. & Cred. § 282 (McKinney Supp.1986). By virtue of N.Y.Debt. & Cred. § 282 (McKinney Supp. 1986), the real property exemptions of N.Y. Civ.Prac.Law § 5206 (McKinney 1978, Supp.1986) ("CPLR") take the place of Code § 522(d)(1). Relevant to these proceedings, CPLR § 5206 provides for a Debtor's exemption of real property consisting of a lot of land with a dwelling thereon, not exceeding Ten Thousand ($10,-000.00) Dollars in value above liens and encumbrances, owned and occupied as a principal residence.

6. In a *joint* bankruptcy case, the New York State homestead exemption may be aggregated to provide a Twenty Thousand ($20,000.00) Dollar homestead exemption. *John T. Mather Memorial Hospital v. Pearl,* 723 F.2d 193, 194 (2d Cir.1983); *In re Webb,* 29 B.R. 280, 283 (Bankr.E.D.N.Y. 1983). In a bankruptcy case filed by an individual, the exemption is limited to Ten Thousand ($10,000.00) Dollars.

7. The Court lacks jurisdiction over Debtor's spouse. However, as Lattner's judgment was taken against Debtor individually, the judgment serves only as a lien upon the Debtor's interest in the property. The Ten Thousand ($10,000.00) Dollar homestead exemption available to Debtor under New York law applies only to his interest. *In re Rizzo,* 21 B.R. 913, 915 (Bankr.W.D.N.Y.1982).

8. The property was used by Debtor as his principal residence, at the time of his filing, there being no evidence presented by Lattner supporting a contrary claim. However, it is likewise true that Debtor specifically designed the building to serve not only as his home, but also as the situs for the transaction of his business. In fact, Debtor used a portion of the premises for business purposes at the time of filing, and continued this use for some six (6) months thereafter. Lebro testified that 400 to 450 square feet of the building's 3057.96 total square feet was dedicated to office facilities. Viewing the only evidence presented in the light most favorable to the Debtor, 13.08% of the building's total square footage had a primary business purpose, to which the Court holds the Debtor's homestead exemption did not apply. The building had a value for purposes of determining Debtor's exemption of Seventy-Six Thousand Nine Hundred Seventy-Five ($76,975.00) Dollars, and consequently, Ten Thousand Sixty-Eight Dollars and Thirty-Three Cents ($10,068.33) of this figure is attributable to the office space to which Debtor's homestead exemption did not apply. For purposes of the present matter, the balance of Sixty-Six Thousand Nine Hundred Six Dollars and Sixty-Seven Cents ($66,906.67) served as collateral for 86.92% (Fifty Thousand Two Hundred Eighty Dollars and Forty-One Cents ($50,280.41) of the bank debt. Total equity in the homestead portion of the premises was thus Sixteen Thousand Six Hundred Twenty-Six Dollars and Twenty-Six Cents ($16,626.26), of which one-half, Eight Thousand Three Hundred Thirteen Dollars and Thirteen Cents ($8,313.13) is properly excludable as belonging to Debtor's spouse. Debtor's homestead exemption of Ten Thousand ($10,000.00) Dollars is applicable to the remaining one-half, with the result that as to the residential portion of the building there is no excess equity to which Lattner's judgment lien can attach.

9. Concerning the business portion of the premises, valued at Ten Thousand Sixty-Eight Dollars and Thirty-Three Cents ($10,068.33), for purposes of this decision Seven Thousand Five Hundred Sixty-Six Dollars and Thirty-Six Cents ($7,566.36) of the mortgage debt is allocated thereto. Equity in the office area of the building is consequently Two Thousand Five Hundred One Dollars and Ninety-Seven Cents ($2,501.97), with one-half thereof, One Thousand Two Hundred Fifty Dollars and

Ninety-Nine Cents ($1,250.99), properly excludable as belonging to Debtor's spouse. The remaining One Thousand Two Hundred Fifty Dollars and Ninety-Eight Cents ($1,250.98) is the value of the property as a whole, to which Lattner's judgment lien attaches.

10. Code § 522(f) empowers the Court to remove as of record judgment liens, *to the extent* they impair an exemption to which the Debtor is otherwise entitled. Lattner's judgment therefore constitutes a lien upon Debtor's interest in the subject real property only to the extent of $1,250.98.

11. Lattner failed to timely file an adversary complaint objecting to the dischargeability of the debt pursuant to Code § 523(c). Consequently, any evidence produced herein which goes to the alleged fraudulent nature of the debt is irrelevant.

As a consequence of the foregoing, it is ORDERED:

1. The judgment in favor of James F. Lattner against Virgil Hager in the amount of Twenty-Eight Thousand ($28,000.00) Dollars recorded with the Clerk of Oswego County, New York, on or about December 20, 1979, is voided insofar as it constitutes a lien on and impairs Virgil Hager's homestead exemption in the real property located at U.S. Route 11 North, Pulaski, Township of Richland, County of Oswego, New York, except to the extent of $1,250.98.

2. The Clerk of Oswego County, New York is directed to mark his or her records accordingly.