**In re Antonio M. BRIZIDA and Maria R. Brizida, Debtors.**

**No. 01–17339–JNF.**

United States Bankruptcy Court, D. Massachusetts.

April 24, 2002.

Robert Simonian, Fall River, MA, for Debtors.

Steven E. Shamban, Ann Brennan, Braintree, MA, for trustee.

### MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

### I. INTRODUCTION

The matter before the Court is the Chapter 7 Trustee's Objection to Exemption Claimed in Real Estate. The Debtor filed a "Motion in Opposition to Chapter 7 Trustee's Objection to Exemption Claimed in Real Estate," and the Court heard the matter on February 12, 2002. At the conclusion of the hearing, the parties requested the opportunity to file briefs, and the Court directed briefs to be filed on or before March 29, 2002. The issue presented is whether the Debtors, the owners of a three-family house located at 482 Bolton Street, New Bedford, Massachusetts (the "property"), may claim an exemption with respect to the entire property or only that portion of the property in which they reside.

The parties submitted an Agreed Statement of Facts setting forth all material facts necessary to decide the dispute. The matter is ripe for determination.

### II. FACTS

The Debtors filed a voluntary Chapter 7 petition on September 20, 2001, and Stephen E. Shamban was appointed the Chapter 7 Trustee. On Schedule A–Real Property, the Debtors listed an ownership interest in the property, which they valued at $175,000. The Debtors hold title to the property pursuant to a deed dated November 14, 1989, recorded at the Bristol County District Registry of Deeds. The Debtors reside in one unit of the three-family house. The other two units are rented to separate tenants. On Schedule I–Current Income of Individual Debtor(s), the Debtors disclosed income from real property in the sum of $838.50.

At the hearing on the Chapter 7 Trustee's Objection, Debtors' counsel represented that the Debtors use the attic for storage. He added that the basement contains storage and laundry facilities, as well as an area where Maria Brizida has a sewing machine for making clothes and drapes. In an Affidavit filed with their brief on March 28, 2002, the Debtors supported these representations, adding that each of the three units has separate heating units;

that there is separate electrical service for each unit; that the property has one main source of water and sewage; that the Debtors are financially responsible for the costs of the water and sewage services; that the tenants have use of the basement for storage and laundry equipment; and that the Debtors pay all the real estate taxes for the property, as well as the insurance costs.[1]

On Schedule C–Property Claimed as Exempt, the Debtors claimed an exemption in the property under Mass. Gen. Laws Ch. 188, § 1 (West 2001) in the sum of $200,000. On Schedule D–Creditors Holding Secured Claims, the Debtor listed Wells Fargo Home Mortgage as the holder of a first mortgage on the property in the sum of $85,943.56.

On July 19, 2001, approximately two months prior to the filing of the Chapter 7 petition, Antonio Brizida recorded a homestead on the property. The Trustee, having obtained an extension of time to object to the Debtor's homestead, timely filed the Objection giving rise to the present controversy.

## III. POSITIONS OF THE PARTIES

### A. *The Trustee*

The Trustee contends that the Debtors' exemption applies only to the apartment in which they reside. He recognizes that there are no current reported cases in Massachusetts specifically pertaining to the issue before the Court. He principally relies upon *In re Mirulla*, 163 B.R. 910 (Bankr.D.N.H.1994), a case in which a creditor objected to the debtor's claimed exemption in a three-story, thirty-two room hotel and a fourteen unit motel. The

debtor and his family used five rooms of the hotel as a principal residence. In support of his exemption, the debtor relied upon an 1895 decision, *Libbey v. Davis*, 68 N.H. 355, 34 A. 744 (1895), in which the court determined that a separate parcel of land adjacent to the parcel where the debtor lived was part of the homestead because it was necessary to the " 'convenient enjoyment of the house by them as a home.' " 163 B.R. at 911 (quoting *Libbey*, 68 N.H. at 356, 34 A. 744). The creditor, however, relied upon another case in which the court determined that the homestead was limited to the family "house" or "home," ruling that a hotel did not qualify. *See Hoitt v. Webb*, 36 N.H. 158 (1858). In *Mirulla*, the court, after reviewing both *Libbey* and *Hoitt*, stated:

I have no doubt that both cases were right when they were decided. Unfortunately, they were both decided in the 1800s and times have changed dramatically, including the types of habitable structures and their means of ownership. When *Libbey* was decided, the adjoining parcel was used as part of the homestead as then commonly understood for food and sustenance as part of a working farm. The debtor makes the argument that this is analogous to his use of the rental proceeds from the hotel and motel rooms in the Hotel and the Motel, to allow him to reside in the five rooms he now occupies. This Court does not believe that analogy to be correct as the income necessary to support the debtor could be from any hotel rooms, whether located adjacent to the rooms where he resides, down the street, or even in another city or state.

---

1. At the hearing, the Court suggested that the Debtors supply the Chapter 7 Trustee with an affidavit as to those representations. The Court indicated that if the Trustee wished to examine the Debtors, the Court would treat the affidavit as the Debtors' direct testimony and schedule a hearing to permit the Trustee to cross examine the Debtors. The Trustee did not advise the Court of the need for such a procedure.

Unlike the use of adjoining land for the growing of crops, pasturing of cattle, and cutting of firewood in 1895, the income from these particular rooms is not necessary to the convenient use of the five rooms in which he resides.

Likewise, when *Hoitt* was decided in 1858, the common form of residence was the free standing house or home. There surely were no motels or condominiums, and large hotels, if any, were the exception.

*Id.* The New Hampshire bankruptcy court relied on more recent cases from a number of jurisdictions, finding that "the debtor has a right to claim a homestead interest in only the five hotel rooms in which he resided at the time of filing his bankruptcy petition." *Id.* at 912 (citing *In re Wierschem*, 152 B.R. 345 (Bankr.M.D.Fla.1993) (one of five rental units exempt); *In re Hager*, 74 B.R. 198 (Bankr.N.D.N.Y.1987), *aff'd*, 90 B.R. 584 (1988) (13.08% of residence used for business purpose not exempt); *In re Aliotta*, 68 B.R. 281 (Bankr. M.D.Fla.1986) (one of four rental units exempt); *In re Rodriguez*, 55 B.R. 519 (Bankr.S.D.Fla.1985) (rental portion of free standing one-story building not exempt); and *In re Evans*, 51 B.R. 47 (Bankr.D.Vt.1985) (one of four buildings on non-subdividable parcel not exempt)). *See also In re Tsoupas*, 250 B.R. 466 (Bankr.D.N.H.2000)(debtor could assert homestead in only one unit of a duplex); *but see In re Ruggles*, 210 B.R. 57 (Bankr.D.Vt.1997)(debtor's claim of homestead exemption in duplex was not bad faith or forbidden by law for purposes of confirmation of Chapter 13 plan),and *In re Wells*, 29 B.R. 688 (Bankr.D.Colo.1983)(under Colorado law debtor was entitled to claim a homestead exemption in a duplex, half of which she occupied and half of which she rented).

### B. *The Debtors*

The Debtors maintain that they are entitled to claim an exemption in the entire property, not merely the portion that they occupy. They point out that the New Hampshire homestead statute is far more restrictive than Mass. Gen. Laws Ch. 188, § 1 as it only permits an exemption of $30,000. In defending their claim of exemption, they rely on the policy of preserving and protecting the homestead and several Massachusetts decisions from the 1800s: *Lazell v. Lazell*, 90 Mass. 575, 1864 WL 3392 (1864); *Mercier v. Chace*, 93 Mass. 194, 1865 WL 3260 (1865); and *Pratt v. Pratt*, 161 Mass. 276, 37 N.E. 435 (1894).

In *Lazell*, a widow petitioned the probate court for an estate of homestead. She and her husband had lived together in a country hotel. Her deceased husband's son from a prior marriage complained "that a hotel is not a species of property which is embraced in the statute providing for homestead exemptions." 90 Mass. 575, 1864 WL 3392 at *2. The court rejected this contention, stating:

> if such objection could be taken as to a structure exclusively devoted to public entertainment, and of the character of those existing in our cities, it does not apply to hotels in country villages, attached to small farms or several acres of land, where the family residence is as much fixed and as perfectly enjoyed as in dwelling-houses occupied by private families.

*Id.*

The Debtors also cite *Mercier v. Chace*, 93 Mass. 194, 1865 WL 3260 (1865), a case in which the homestead at issue was "the home and residence of Allen Chace and his family, but the house was not exclusively occupied by him." 93 Mass. 194, 1865 WL 3260 at *2. The court described the house as follows: "this tenement ... [is] ... a

single building, designed as a dwelling-house, and not a part of a block constructed with a view to furnish several dwelling-houses." *Id.* The court concluded that "the homestead estate may be taken to include an entire dwelling-house, although a portion of the same is occupied by a third person paying rent therefor to the owner." *Id.* The court reasoned as follows:

> The position that the statute in continuing to the widow the homestead of her late husband had only the purpose of giving her a home, and that it was not available to her as a source of income, is very much weakened by the provisions of Gen. Sts. c. 104, § 14, which seem to recognize such convertibility into a rent or income from its use by others as a proper use of the homestead by the widow; and in that view directly authorize her to make sale of her interest in such homestead, giving the purchaser the right to enjoy and possess the premises for the full term that the widow might have held the same.

*Id.*

The Debtors also rely on *Pratt v. Pratt,* 161 Mass. 276, 37 N.E. 435 (1894), in which the court, citing *Mercier v. Chace,* ruled that an estate of homestead extended to the entire estate, namely a single family house with one front door, which the petitioner and respondent shared. The petitioner lived in the northerly half of the house while the respondent lived in the southerly half of the house. The cellar, hallways, stairs and some rooms and the barn were used in common. The court indicated that the record did not indicate whether the respondent paid rent but stated that "we do not think that it makes any difference whether he was a tenant, or was merely allowed by his father to live there." 161 Mass. at 278, 37 N.E. at 436.

## IV. DISCUSSION

### A. *The Statute*

The Massachusetts Homestead Statute provides in relevant part the following:

*An estate of homestead* to the extent of $300,000 *in the land and buildings* may be acquired pursuant to this chapter by an owner or owners of a home or one or all who rightfully possess the premise by lease or otherwise and who occupy or intend to occupy said home as a principal residence. Said estate shall be exempt from the laws of conveyance, descent, devise, attachment, levy on execution and sale for payment of debts or legacies except in the following cases: ...

For the purposes of this chapter, an owner of a home shall include a sole owner, joint tenant, tenant by the entirety or tenant in common; provided, that only one owner may acquire an estate of homestead in any such home for the benefit of his family; and provided further, that an estate of homestead may be acquired on only one principal residence for the benefit of a family. For the purposes of this chapter, the word "family" shall include either a parent and child or children, a husband and wife and their children, if any, or a sole owner.

Mass. Gen. Laws Ann. Ch. 188, § 1 (West 2001)(emphasis supplied).

### B. *Analysis*

■ The Court is not persuaded that the decisions cited by the Trustee require denial of the Debtors' claimed homestead exemption. State homestead exemptions schemes tend to be unique, and, as the cases cited above demonstrate, there is a lack of consensus with respect to whether a homestead exemption can be claimed in a multi-family dwelling. As a consequence, the Court is persuaded that the decisions

cited by the Debtor support their claim to a homestead exemption in their entire three family residence.

In addition to the cases cited by the Debtors, several early Massachusetts cases also shed some light on the nature of the homestead statute as it has evolved in the Commonwealth. For example, in *Thurston v. Maddocks,* 88 Mass. 427, 1863 WL 3435 (1863), a tenant contended that his title to real property related back to the date the property owner promised to convey the property to him for purposes of his acquisition of an estate of homestead. The court determined that the homestead statute in effect at the time did not include "such a mere equitable title as created by a bond for a deed," stating that "[a]n estate in which a homestead may exist is such as is conveyed by deed...." 88 Mass. 427, 1863 WL 3435 at *2. The court added the following:

The object of this clause in St. 1855, c. 238, obviously was to create a homestead right in a house owned by the occupant, but standing on leased land; so that the house should be exempted from attachment though it was subject to removal, and though there was no homestead right in the land.

*Id. See also Assistant Recorder of the North Registry District of Bristol County v. Spinelli,* 38 Mass.App.Ct. 655, 651 N.E.2d 411 (1995)(beneficial owner of trust not entitled to record homestead).

In *Silloway v. Brown,* 94 Mass. 30, 1866 WL 4795 (1866), the court considered the nature of a debtor's homestead after he had filed bankruptcy. At the time the defendant acquired his title, "there was 'exempted, to the value of eight hundred dollars,' from sale or levy on execution for subsequent debts, 'the homestead farm or lot and buildings thereon, occupied as a residence and owned by the debtor....'" 1866 WL 4795 at *3. The law in effect at the time also provided that a homestead estate to which an insolvent debtor was entitled in property of greater value than eight hundred dollars could set off by the debtor under the direction of the court of insolvency by three appraisers, one appointed by the debtor, one by his assignee in insolvency, and the third by the court. The residue was to vest in and be disposed by the assignee. The court considered the nature of the debtor's interest and his relation to the purchaser of the residue, stating

The estate of the judgment creditor would be thus left in common with that of the owner of the homestead, much as in the case of a levy upon the interest of one tenant in common. The homestead estate might by express statute be set off by partition upon the application of either party, like an ordinary estate in common. Or upon a bill in equity to redeem the land from a mortgage, it might be set off by commissioners.

94 Mass. 30, 1866 WL 4795 at *5. The court added that "[t]he homestead estate differs indeed from ordinary estates held in common, in not being an aliquot part of the land, but measured by value only, which may be constantly fluctuating." *Id.* (emphasis supplied).

In *Bates v. Bates,* 97 Mass. 392, 1867 WL 5633 (1867), the court stated that

The estate of homestead is one of a peculiar nature. It is a provision by the humanity of the law for a residence for the owner and his family. *It is to be assigned by metes and bounds,* and is to be occupied by the party entitled to it. There is no provision, like that in the case of dower, for assigning it in the rents and profits of the land or buildings in which it is to be held and enjoyed. It has been held that it does not exist in an estate in which the owner has only an undivided interest as tenant in common.

*Thurston v. Maddocks,* 88 Mass. 427, 6 Allen, 427. *Silloway v. Brown,* 94 Mass. 30, 12 Allen, 30.

97 Mass. 392, 1867 WL 5633 at *3–*4 (emphasis supplied).

While these cases, at first blush, do not appear to facilitate resolution of the issue before the Court, the references to the estate of homestead being created by deed and assigned by metes and bounds support the Debtors' position that their homestead extends to the entire three-family house, not just the floor they occupy. The reason is simple. Unlike the situation involving condominiums, the owner of a three-family house does not hold a divisible interest in one floor that is transferrable by deed. Although a debtor may convey a portion of the property by deed, the interest transferred to a tenant in common, for example, is characterized by a single essential unity—that of possession, or of the right to possession, and a tenant in common only obtains a fractional share upon partition. Thus, the interest of a tenant in common owning a third of a three-family house does not correspond to an interest in one particular floor or unit of the three-family house. Moreover, as the court observed in *Silloway,* the homestead estate is measured by value only, not by an aliquot part as is the case with tenants in common. Thus, in addition to *Lazell, Mercier,* and *Pratt,* the above trio of cases supports the Debtors' position at least indirectly.

■ More recent cases also support the Debtors' position. In *Dwyer v. Cempellin,* 424 Mass. 26, 673 N.E.2d 863 (1996), the court stated that "[p]ublic policy dictates that exemption laws, such as homestead provisions, should be liberally construed to comport with their beneficent spirit of protecting the family home.'" 424 Mass. at 29, 673 N.E.2d at 866. In *Shamban v. Masidlover,* 429 Mass. 50, 705 N.E.2d 1136

(1999), the court reiterated public policy considerations, stating:

> Homestead laws are designed to benefit the homestead declarant and his or her family by protecting the family residence from the claims of creditors. Homestead laws are based on public policy that favors preservation of the family home regardless of the householder's financial condition. Furthermore, homestead laws tend to prevent debtors and their families from becoming public charges. In light of the public policy and the purpose of the statutes, this court has construed the State homestead exemptions liberally in favor of debtors. This approach is in keeping with authority in other jurisdictions.

429 Mass. at 53, 705 N.E.2d at 1138 (citations omitted).

Finally, this Court notes that Judge Rosenthal had the opportunity to review the issue presented in this case in *In re Kewriga,* No. 01–44262, Slip op. (Bankr.D.Mass. October 29, 2001). In the *Kewriga* case, the debtors owned a multi-unit building located at 125–127 Village Street, Medway Massachusetts. Four of the units were used as rental property and one was used for commercial purposes. Relying upon *Mercier v. Chace,* the court overruled the objection of the creditors and rejected the argument that the Debtors' property should not be subject to the homestead exemption because some of the units were used for rental purposes.

## V.  CONCLUSION

The Court shall enter an order overruling the Trustee's Objection. In view of the scope and number of decisions interpreting the Massachusetts homestead statute, this Court finds that reliance on cases from other jurisdictions is unwarranted. Upon consideration of the decisions in *Lazell, Mercier* and *Pratt,* as well as the addition-

al Massachusetts cases cited above, and liberally interpreting Mass. Gen. Laws Ch. 188, § 1, the Court finds the Debtors' position is consistent with the public policy of preventing debtors and their families from becoming public charges. Indeed, the monies received from the rental of two floors of the Debtors' three-family house serves that very purpose. Moreover, as in *Masidlover*, this Court's interpretation of G.L. Ch. 188, § 1 in a manner permitting Antonio Brizida to claim an exemption in the Debtors' three-family home does not lead to an absurd result. *See* 429 Mass. at 54, 705 N.E.2d at 1139.